MOTORS ACCEPTANCE CORPORATION, APPELLANT, V. J. F.
MCLAIN, DIRECTOR OF BANKING, ET AL., APPELLEES.

47 N. W. 2d 919

Filed May 22, 1951. No. 32935.

*Morsman, Maxwell, Fike & Sawtell,* and *Woods, Aitken
& Aitken,* for appellant.

*Clarence S. Beck, Attorney General,* and *Robert A.
Nelson,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an appeal from a judgment of the district
court for Lancaster County affirming an order of the
Director of Banking denying a small loan license to

Motors Acceptance Corporation. We shall consider the appeal on the record to determine if the administrative order in question is unreasonable and arbitrary.

The evidence shows that Motors Acceptance Corporation applied for a license to operate a small loan business at 2563 Farnam Street, Omaha, Nebraska. It appears from the record that the nearest small loan business to this address is about 3 blocks east and that there is no such business operating west of Twenty-fourth Street in Omaha. Applicant's manager testifies that there is a need for a small loan business in this area of the city.

The evidence offered by the Director of Banking is that there are already 31 existing small loan licenses in Omaha in addition to 63 other agencies engaged in consumer credit by the direct lending of money. Of the 31 small loan licensees, the evidence shows that 24 were making a profit, the average of which was 6.67 percent in 1948. The remaining 7 suffered losses in 1948, the average of which was 1.56 percent. The average earnings of the 31 licensees in 1948 was 4.74 percent. It is shown by the evidence that existing licensees have adequate capital to handle the small loan business in Omaha and that the granting of more licenses would tend to decrease the net earnings, which would in turn tend to keep the cost to the borrower at maximum levels. It is shown also that the 31 licensees are now required to advertise heavily for business. It is the opinion of the director that to grant more licenses would result in excessive competition which would operate to the disadvantage of the necessitous borrower by forcing maximum rates. It would, also, add to the burden of efficient regulation in that an excessive number of licensees invariably produce increased numbers of violations of the licensing act. There is evidence that existing licensees are so located as to serve the needs of the city of Omaha and that, from the standpoint of the public, no need exists for the proposed service at the place for which the application was made.

The application for the license was made pursuant to section 45-120, R. S. 1943, which provides in part: "Upon the filing of such application, * * *, and, if he (Director of Banking) shall find that (1) the experience, character and general fitness of the applicant * * * are such as to warrant belief that the business will be operated honestly, fairly and efficiently within the purposes of sections 45-114 to 45-155, and (2) allowing such applicant to engage in business will promote the convenience and advantage of the community in which the business of the applicant is to be conducted, the Department of Banking shall issue and deliver an original license to the applicant to make loans at the location specified in said application, * * *." The experience, character, and general fitness of the applicant are not here questioned. The sole question is whether the refusal of the Director of Banking to grant a license to the applicant, on the ground that its granting would not promote the convenience and advantage of the community in which the business of the applicant is proposed to be conducted, is unreasonable and arbitrary under the evidence reflected by the record before us.

It is the contention of the applicant that the Legislature never intended to give to the Director of Banking the authority to determine the number of small loan licenses to be granted by requiring a finding that the issuance of the license would promote the "convenience and advantage" of the community where the business was to be conducted. The small loan business is one which is subject to regulation because of the abuses which seem to be inherently linked with it. Effective regulation requires that the privileges of the act be not granted indiscriminately. Unrestrained competition appears to have attracted an overabundance of capital as compared with borrowing needs. Increased costs of lending and excessive charges to borrowers were the result. To overcome the evils of unrestrained competition in this field the Legislature has limited it to those having ex-

perience, character, and general fitness, and to places where need for that type of credit exists, and where the business would promote the convenience and advantage of the community where it is to be conducted. We think the last clause clearly indicates that some plan of measuring the small loan potential of each community was contemplated and that the licenses issued were intended to be restricted to the need thus found to exist. By this means the Legislature intended to eliminate or reduce unethical business practices, unfair and unrestrained competition, and overextension of credit. It intended also to increase efficiency, reduce costs of operation, and encourage rate reduction; thus contributing to the welfare of the borrowing public in a field where unethical practices have heretofore flourished.

Applicant contends that the "convenience and advantage" clause in the act clothes the Director of Banking with arbitrary power uncontrolled by a reasonable rule of action governing the exercise of the power. This contention was well answered in Kelleher v. Minshull, 11 Wash. 2d 380, 119 P. 2d 302, where the court in dealing with a similar provision said: "It will be observed that the standard adopted by the legislature contemplated two factors: (1) the financial responsibility, experience, character, and general fitness of the applicant for a license, and (2) the convenience and advantage resulting to the community from the granting or denial of a license. Thus, the legislature sought not only to guarantee that the small loan business would be conducted by men of the ability, character, and financial standing necessary for the protection of those who may be compelled by reason of some serious emergency to borrow small sums of money, but also to make sure that the needs of the community in that respect were not outrun by the number of such establishments, at the risk of defeating the beneficent purposes of the act. The legislative desideratum was not the mere restriction in number of licensees, but rather the accomplish-

ment of the well known objectives for which the act was passed.

"It is not always necessary that statutes and ordinances prescribe a specific rule of action. This is particularly true in those situations where it is difficult or impracticable to declare a definite, comprehensive rule, or where the discretion to be exercised by an administrative officer relates to a regulation imposed for the protection of public morals, health, safety, and general welfare. 11 Am. Jur. 948, Constitutional Law, § 234."

In Weer v. Page, 155 Md. 86, 141 A. 518, the court in dealing with similar provisions said: "The statute does not commit to the bank commissioner an unlimited discretion. It directs him to ascertain, 'whether the character, responsibility and general fitness' of the incorporators 'are such as to command confidence and warrant belief that the business of the proposed corporation will be honestly and efficiently conducted,' and 'whether the public convenience and advantage will be promoted by allowing the proposed corporation to engage or continue in business.' These are sufficiently definite standards for the administrative action which the statute authorized. * * * The reasons given by the commissioner for his disapproval of the Sykesville bank charter did not include any objection to the incorporators with respect to their qualifications. The explanation was simply that the bank was not needed and that it would not have a reasonable chance to succeed. This is said to be a different basis of decision from that which the statute defines. Its concern was with the public convenience and advantage, and, according to its evident design, the commissioner was authorized to refuse a projected incorporation by which that object would not be promoted. In stating his conclusion that another bank was not needed at Sykesville, and that its prospect for success was unfavorable, the commissioner was dealing with considerations which vitally affected the

question presented for his determination. It could not be said that the public convenience of a community would be promoted by the organization of an additional bank which it did not need, and its interests might be seriously prejudiced by the unsuccessful operation of such an institution."

See, also, Equitable Loan Society, Inc. v. Bell, 339 Pa. 449, 14 A. 2d 316; Bank of Italy v. Johnson, 200 Cal. 1, 251 P. 784.

We think the evidence shows that the order denying the application for a small loan license was not unreasonable or arbitrary. The restriction of the number of licenses is necessary to the accomplishment of the purposes of the act and not for the purpose of creating a monopoly. The limitation of licenses is incidental merely to the regulation of the business. Such provisions are not violative of constitutional provisions as conferring arbitrary powers where an adequate appeal to the courts is provided. See Althaus v. State, 99 Neb. 465, 156 N. W. 1038. They are not arbitrary or discriminatory if they bear a reasonable relation to the accomplishment of a proper legislative purpose. The small loan business being subject to regulation by the state in the exercise of its police power, it cannot be said that an administrative order, which is sustained by evidence, showing a reasonable relation to its regulation, is unreasonable and arbitrary. The requirement of the statute that the Director of Banking ascertain whether the experience, character, and general fitness of the applicant are sufficient or not, and whether or not the public convenience and advantage will be promoted by allowing an applicant to engage in the small loan business, supplies sufficient standards for the administrative action authorized by the statute in granting or refusing to grant a license. Kelleher v. Minshull, *supra.*

For the reasons stated the judgment of the district court is affirmed.

AFFIRMED.