FAMILY FINANCE CORPORATION, A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT, v. WARREN N. GAFFNEY, COMMISSIONER OF BANKING AND INSURANCE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued February 9, 1953—Decided March 2, 1953.

*Mr. William L. Dill, Jr.,* argued the cause for appellant (*Messrs. Stryker, Tams & Horner,* attorneys; *Mr. David D. Furman* on the brief).

*Mr. Oliver T. Somerville* argued the cause for respondent (*Mr. Theodore D. Parsons,* Attorney-General, attorney).

*Mr. John W. Griggs* argued the cause for objector, North Jersey Finance Co., Inc. (*Messrs. Morrison, Lloyd & Griggs,* attorneys).

Briefs *amici curiae* were filed for Auto Loan Company, Workers Finance Co., *et al.* (*Mr. Max Mehler,* attorney); and Household Finance Corporation (*Messrs. Starr, Summerill & Davis,* attorneys; *Messrs. Charles S. Kelly* and *John D. Hastings,* of the Illinois Bar, on the brief).

The opinion of the court was delivered by
WILLIAM J. BRENNAN, JR., J.   No person may conduct a small loan business at any location without first obtaining

a license from the Commissioner of Banking and Insurance, *R. S.* 17:10–2. The Commissioner "shall issue" the license if he finds that the financial responsibility, experience, character and general fitness of the applicant, and of the officers and directors thereof, if a corporation, are such as to command the confidence of the community and to warrant belief that the business will be operated honestly, fairly and efficiently, that the applicant's net worth is at least $25,000 and that the applicant has liquid assets of at least that amount available for the purpose of making small loans at the specified location, and "that allowing the applicant to engage in business will promote the convenience and advantage of the community in which the business of the applicant is to be conducted." *R. S.* 17:10–5(*b*).

Family Finance Corporation filed an application on December 16, 1949 for a license for a location at 66 Hudson Street, Hoboken. At that time there were two small loan licensees doing business in that city. The applicant was found to be qualified as to financial responsibility and character, but the license was denied on the ground that the issuance of another license in Hoboken would not promote the convenience and advantage of the community.

The decision was reversed in the absence of findings of basic facts supporting this determination. *Family Finance Corp. v. Gough,* 10 *N. J. Super.* 13 (*App. Div.* 1950). It was held, however, that the convenience and advantage clause provided a legally sufficient standard for the guidance of the Commissioner and empowered him to limit the number of licenses in a community "by declining to issue an additional license therein [to an applicant otherwise qualified] in the absence of a showing that the granting of the additional license will promote the convenience and advantage of the community within the contemplation of *R. S.* 17:10–5," 10 *N. J. Super.,* at *p.* 21.

The application has been reheard and has again been denied on the ground that the issuance of an additional license in Hoboken will not promote the convenience and

advantage of the community. We certified of our own motion this appeal of the company to the Appellate Division from this second determination of denial.

The respondent Commissioner based his decision on ten findings of fact from the testimony and exhibits in evidence, which we summarize as follows: (1) that the population of Hoboken increased hardly at all from 1940 to 1950 compared with a substantial increase in the State; (2) that retail sales in Hoboken show a smaller percentage of increase from 1939 to 1948 than the percentages for Hudson County and the State; (3) that Hoboken's retail sales have only a slightly higher average per personal loan office now licensed in Hoboken than the State average; (4) that Hoboken's per capita retail sales figure is lower than the State per capita although a little higher than the county per capita; (5) that Hoboken is not a trade center (although it is an active business center), and its merchants must depend primarily upon the patronage of Hoboken residents; (6) that there is already a licensed small loan lender next door to 66 Hudson Street; (7) that there are two banks, two state credit unions and seven federal credit unions all engaged in making personal loans in Hoboken; (8) that the business of the small loan licensee most recently licensed (in 1947) has had no substantial growth since 1948; (9) that there is competition now between the two present Hoboken licensees, 13 others in Jersey City, and three in Union City; (10) that the present licensees have sufficient working capital and credit to meet the demands for service in Hoboken. He therefore concluded that "allowing the applicant to engage in business would not promote the convenience and advantage of the community in which the business is proposed to be conducted."

Appellant contends on this appeal that the convenience and advantage clause cannot constitutionally be construed and applied to authorize denial of a license to an applicant, as here, found by the Commissioner to be financially and otherwise qualified, save as it appears that the applicant plans to operate the small loan business at the specified location merely "as an adjunct to another business"

or when "the foreseeable borrowing needs of the community are negligible," that is, when the applicant will not be able to do a loan business of at least $25,000. Particularly, it is argued, is there an unlawful invasion of constitutionally protected rights of private property in a denial based upon the capacity of the present licensees to handle foreseeable additional loan demands. This, appellant says, constitutes an unlawful suppression of competition, *H. P. Hood & Sons v. DuMond,* 336 *U. S.* 525, 538, 69 *S. Ct.* 657, 93 *L. Ed.* 865, 874 (1949); *Federal Communications Commission v. Sanders Bros. Radio Station,* 309 *U. S.* 470, 60 *S. Ct.* 693, 84 *L. Ed.* 869 (1940), and an arbitrary and capricious action going beyond the demands of the public interest which alone will justify the exercise of the regulatory power, *Sheffield Farms Co., Inc., v. Seaman,* 114 *N. J. L.* 455 (*Sup. Ct.* 1935); *Regal Oil Co. v. State,* 123 *N. J. L.* 456 (*Sup. Ct.* 1939); *N. J. Good Humor, Inc., v. Bradley Beach,* 124 *N. J. L.* 162 (*E. & A.* 1940); cf. *Reingold v. Harper,* 6 *N. J.* 182 (1951); *Lane Distributors v. Tilton,* 7 *N. J.* 349 (1951); that a denial on such grounds bears no rational relation to the protection of the public health, morals, general safety or welfare and abridges the fundamental common right to engage in a lawful pursuit protected by Article I of the New Jersey Constitution and the Fourteenth Amendment of the Federal Constitution.

It is said in the brief:

"Protection of the public against the operation of small loan businesses by persons of unfit character and without adequate financial resources is a legitimate exercise of the legislative power. Once these qualifications have been met, any further limitation imposed by the convenience and advantage clause must be of narrow scope or fail * * *."

It is insisted that the underlying "public welfare considerations," which the company concedes may support a limitation upon the number of banks in a community, *R. S.* 17:9A–11 ("There is a clear and pressing public interest in safeguarding against bank failures, which are disastrous to a

community, destroying savings and other bank credits"), have no counterparts in small loan business.

"The customers of the community do not suffer economic injury from the failure of a small loan business. There is no overriding public advantage in the survival of such small loan business. Normal economic factors should be allowed full play, in accordance with the constitutional principle of non-interference by the legislature with private business, except by regulation which is reasonably requisite to the public health, safety or welfare."

It is urged that appellant's proofs that a number of Hoboken residents now maintain loans with appellant at its Jersey City and Union City offices and largely would transfer their accounts to a Hoboken office operated by it, and the evidence showing that Hoboken is one of the busiest centers in the State for commuter transit traffic demonstrate that it would serve the convenience and advantage of Hoboken to grant the license sought, and that it is constitutionally indefensible to construe the convenience and advantage clause to authorize the Commissioner to deny the license in the circumstances.

We see no merit in the argument. The Legislature has seen fit to establish the policy that the general welfare is best subserved by restricting the number of small loan establishments in a given community. Appellant has abandoned on this appeal the contention made on the earlier appeal that this policy is *per se* constitutionally insupportable. Appellant's present position is that the restrictive policy is valid only if applied within the very narrow limits suggested by appellant. However, we are satisfied that the construction given the policy by the Commissioner not only is within the purview of the power delegated by the Legislature but that, so construed, this legislative determination is not so clearly unreasonable as to warrant this court in striking down the controverted clause, which is the practical result of the construction contended for by appellant. *Cf. Abelson's, Inc., v. N. J. State Board of Optometrists*, 5 *N. J.* 412, 421 (1950); *Reingold v. Harper, supra.* Although other criteria may also

be within the purview of the clause, dependent upon their relation to the objectives of the Small Loan Act in light of its history and purpose, it is difficult to see how better the Commissioner can execute the legislative policy than by looking to the needs of the community in determining whether the grant of a license will promote its convenience and advantage.

A brief recital of the history of small loan legislation generally and of the convenience and advantage clause in particular will show clearly the relation of the restrictive policy as applied by the Commissioner, to the public interest, and dispel the thought 'that the construction of the clause complained of may be viewed as constituting unreasonable and arbitrary regulation. The small loan business is a social and economic necessity responsive to the needs of borrowers usually wage earners, who have no banking credit and require small loans for emergency needs. Such legislation was made necessary by the urgent need to protect such borrowers against the oppressive practices of loan sharks who prey upon their critical circumstances to exact exorbitant rates of interest. *Nugent, The Loan-Shark Problem,* 8 *Law and Contemporary Problems* 3 (*Duke University, Winter* 1941). The need was for legislation not only to free the borrowers from the domination of the loan shark but also to provide them with a properly regulated source of credit at a cost commensurate with the risk and expense involved. In 1907 the Russell Sage Foundation undertook to make a scientific study of the problem, *Ex parte Fuller,* 15 *Cal. 2d* 425, 102 *Pac. 2d* 321, 324 (*Sup. Ct.* 1940), and in 1916 promulgated the first draft of a Uniform Small Loan Law, *Hubachek, The Development of Regulatory Small Loan Laws,* 8 *Law and Contemporary Problems, supra, p.* 108. New Jersey, however, adopted a regulatory statute two years before, *L.* 1914, *c.* 49, *p.* 75.

The first draft of the Uniform Small Loan Law and our own statute provided for licensing small loan lenders but did not permit the denial of a license except as it appeared that the character and general fitness of the lender was not such as to command the confidence of the community and to war-

rant the conclusion that the business would be honestly prosecuted. *L. 1914, c. 49, supra.*

However, while the objective of eliminating the loan shark was thereby largely achieved, it was shortly discovered that emphasis upon the character and fitness of the lender was not enough; that the expansion of the regulated business, due to the attractiveness of the return, brought on other undesirable consequences.

> "A time came when there were too many licensed lenders and too many dollars seeking to be lent. Competition * * * took the form of excessive solicitation and overlending. This in turn lead to the borrower's delinquency which fostered collection abuses." *Hubachek, supra,* p. 121.

This demonstration that the public interest was not well served prompted the Russell Sage Foundation to include the convenience and advantage clause in its fifth draft of the uniform law as an additional requirement to the requirements of character and fitness of the applicant.

Meanwhile in New Jersey the "unethical lending practices, over-extension of credit, and other extremes" brought on by the expansion of the industry (in 1929 the business had grown to 415 licensed offices servicing 64 communities in 18 counties), *Sullivan, Administration of a Regulatory Small Loan Law,* 8 *Law and Contemporary Problems, supra, p.* 146, prompted the Legislature to attempt to eliminate these undesirable consequences by drastically reducing the allowable interest charge. *L. 1929, c. 293, p.* 683. This measure defeated its own ends. It drove most of the licensed lenders from New Jersey and dried up the regulated loan source. Conditions thus became favorable for the return of the loan shark. Thereupon the Legislature, by Joint Resolution No. 9, *L.* 1931, *p.* 1265, created a commission to study the problem. The commission recommended that the allowable interest rate be increased to make the business attractive to small loan lenders but also that the Small Loan Act be revised in several respects, particularly to add the convenience and advantage clause suggested in the fifth draft of a Uniform

Small Loan Law. These recommendations were adopted by the Legislature and were incorporated in *L*. 1932, *c*. 62, *p*. 94, *R. S*. 17:10–1 *et seq., N. J. S. A*. We may therefore borrow as wholly apt what was said of similar action by the legislature of the State of Washington:

"Thus, the legislature sought not only to guarantee that the small loan business would be conducted by men of the ability, character, and financial standing necessary for the protection of those who may be compelled by reason of some serious emergency to borrow small sums of money, but also to make sure that the needs of the community in that respect were not outrun by the number of such establishments, at the risk of defeating the beneficent purposes of the act. The legislative desideratum was not the mere restriction in number of licensees, but rather the accomplishment of the well known objectives for which the act was passed." *Kelleher v. Minshull*, 11 *Wash.* 2d 380, 119 *Pac.* 2d 302, 309 (*Sup. Ct.* 1941).

Clearly, then, there is such a direct and immediate connection with the public interest, *cf. Schmidt v. Board of Adjustment, Newark*, 9 *N. J*. 405 (1952); *Household Finance Corporation v. State*, 40 *Wash.* 2d 451, 244 *Pac.* 2d 260 (*Sup. Ct.* 1952), as to justify the Commissioner's construction and to prevent our saying that his refusal to grant an additional license was plainly arbitrary and not in the service of the objectives of the Small Loan Act. The test upon review of his action in determining an application for a small loan license is whether in view of the nature of the small loan business and the purposes and objectives of the Small Loan Act his action is supported by findings rested upon proofs, which findings establish that his action is not merely arbitrary and outside the purposes of the act. *Family Finance Corp. v. Gough, supra*.

There are now only a few states without a small loan law. The laws generally are patterned after one or more of the several drafts of the Uniform Small Loan Law. *Kelleher v. Minshull, supra*. These laws have generally survived attacks upon their constitutional validity, particularly such attacks as have been made on grounds that they violate the due process clause, the equal protection clause, or the privileges and immunity clause of the Federal Constitution and corre-

sponding provisions of the state constitutions. And attacks upon the convenience and advantage clause have been signally unsuccessful. *Kelleher v. Minshull, supra; Equitable Loan Society, Inc., v. Bell,* 339 *Pa.* 449, 14 *A.* 2d 316 (*Sup. Ct.* 1940), appeal dismissed 311 *U. S.* 621, 61 *S. Ct.* 393, 85 *L. Ed.* 394, 61 *S. Ct.* 393 (1940); *Bank of Italy v. Johnson,* 200 *Cal.* 1, 251 *Pac.* 784 (*Sup. Ct.* 1927); *Weer v. Page,* 155 *Md.* 86, 141 *A.* 518 (*Ct. App.* 1928); *State ex rel. Djbdal v. State Securities Comm.,* 145 *Minn.* 221, 176 *N. W.* 759 (*Sup. Ct.* 1920); *Schaake v. Dolley,* 85 *Kan.* 598, 118 *Pac.* 80 (*Sup. Ct.* 1911); *In re James,* 99 *Vt.* 265, 132 *A.* 40 (*Sup. Ct.* 1926); *State v. Darazzo,* 97 *Conn.* 728, 116 *A.* 81 (*Sup. Ct. Err.* 1922); *State v. LeFebvre,* 174 *Minn.* 248, 219 *N. W.* 167 (*Sup. Ct.* 1928); *Barbour v. Walker,* 126 *Okla.* 227, 259 *Pac.* 552, 56 *A. L. R.* 1049 (*Sup. Ct.* 1927); *Georgia Public Service Comm. v. Saye & Davis Transfer Co.,* 170 *Ga.* 873, 154 *S. E.* 439 (*Sup. Ct.* 1930); *United States v. American Bond & Mtge. Co.,* 31 *Fed.* 2d 448 (*D. C. N. D. Ill.* 1929), affirmed *American Bond & Mtge. Co. v. United States,* 52 *Fed.* 2d 318 (*C. C. A.* 7, 1931), *cert.* den. 285 *U. S.* 538, 52 *S. Ct.* 311, 76 *L. Ed.* 931 (1932); *Motors Acceptance Corp. v. McLain,* 154 *Neb.* 354, 47 *N. W.* 2d 919 (*Sup. Ct.* 1951).

What we have already said also shows the lack of merit in appellant's second and last argument, namely, that the Commissioner failed to follow the standard prescribed by the Legislature for the determination of small loan applications and substituted a stricter standard. The burden was upon appellant to establish that its proposed business will promote the convenience and advantage of Hoboken and that burden appellant did not sustain. See *Holly v. Bates,* 7 *N. J.* 191 (1951). The burden was not carried by the proofs that if licensed the company could better service the customers of its Jersey City and Union City offices resident or working in Hoboken. The proofs show that 16 other small loan companies also not licensed in Hoboken are similarly circumstanced. To grant appellant a license on that ground would mean that applications by these other qualified lenders on the

same ground could not be rejected. Thus the needs of Hoboken could readily be outrun by the number of such establishments and the convenience and advantage clause be rendered utterly impotent. On the other hand, the ten findings made by the Commissioner, all supported in the evidence, negate any basis for a holding by us that his denial was not in fact in the service of the purpose of the convenience and advantage clause and was arbitrary and capricious. The findings clearly refute any suggestion that his action was designed to advantage the present licensees. Their resultant competitive advantage, if any, is merely an incidental consequence of the furtherance of the restrictive policy deemed by the legislature to be essential to achieve the beneficent purposes of the Small Loan Act.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and BRENNAN —6.

*For reversal*—None.