### 17630

**BOARD OF BANK CONTROL of the State of South Carolina, Appellants, v. R. T. THOMASON, Jr., and W. Calvin White, for Fidelity Finance Company, Respondents**

(113 S. E. (2d) 544)

160

*Messrs. Daniel R. McLeod, Attorney General,* and *William F. Austin, Assistant Attorney General,* of Columbia, *for Appellants,*

*Messrs. Whiteside & Smith,* of Spartanburg, *for Respondents,*

March 22, 1960.

OXNER, Justice.

This is an appeal from an order of the Judge of the County Court of Spartanburg County holding that the State Board of Bank Control erred in denying respondents' application for a license to conduct a small loan business in the City of Spartanburg and directing the Board to forthwith issue to respondents a license to engage in such business.

Act No. 310 of the 1957 Acts of the General Assembly, 50 St. at L. p. 339, now forming Sections 8-794 to 8-794.166 of the 1959 Cumulative Code Supplement, authorizes under certain conditions an interest rate in excess of that permitted by the general usury statute on loans of $200.00 or less. The supervision of this business is vested in the State Board of Bank Control. It is authorized by the Act to issue licenses to engage in the small loan business but to do so must find: "(a) that the financial responsibility, character, experience and general fitness of the applicant are such as to command the confidence of the public and to warrant belief that the business will be operated lawfully, honestly, fairly and efficiently within the purposes of this chapter, which requirements shall be maintained during the period of the license, (b) that the applicant has available adequate funds in the discretion of the Board for the operation of such business at the specified location and (c) allowing such applicant to engage in business will promote the convenience and advantage of the community in which the licensed office is to be located." Section 8-794.40 of the 1959 Cumulative Supplement.

On January 29, 1959 the Fidelity Finance Co., a partnership composed of respondents R. T. Thomason, Jr. and W. Calvin White, applied for a license to conduct a small loan business at 129 North Spring Street in the City of Spartanburg. After due notice, a hearing was held by a director of the Board on April 14, 1959. The application was opposed by various persons. Both the applicants and objectors were

represented by counsel. The major controversy was as to the need of an additional small loan business in this area. On this issue the applicants filed a number of affidavits and letters by residents of the City of Spartanburg. Also considered at the hearing were various facts set forth in the briefs of counsel and a survey made by the Board of Bank Control on December 3, 1958, showing the population of the City and County of Spartanburg, the number of colleges and industrial plants and wages paid, the agricultural production, and other statistical data relating to the economic conditions of the County and growth prospects. This survey further disclosed that as of November 30, 1958, the City of Spartanburg was served by three banks, ten unlicensed large finance companies and twenty-eight small loan companies. There was also shown the number and amount of outstanding loans by each group. It further appeared that since the survey was made, the Board on January 14, 1959 had granted an additional small loan license, making the total number of small loan companies in the City of Spartanburg at that time twenty-nine.

In an order filed on May 27, 1959, the Board of Bank Control concluded that the applicants had met the requirements as to financial responsibility, character, experience and general fitness but that the issuance of an additional license would not promote the convenience and advantage of the community. The Board said that when the 29th license was granted on January 14, 1959, it was of the opinion that there were sufficient small loan companies in the City of Spartanburg to serve the community and that there had since been no substantial change in conditions. The following was then stated in the order:

"In the State of South Carolina there are now 504 licensees under the Small Loan Act. This based on the population of the State of South Carolina shows that each licensee serves approximately 4,000 persons. Applying this formula to the City of Spartanburg, it shows that each licensee would serve 1,269 persons. This is based on the official 1950 census.

"It would, therefore, appear that the Spartanburg City proper is adequately served by the licensees that are now operating within the City. It is conceded that all of the County population partronize the business establishments of the City of Spartanburg. As hereinabove pointed out, there are 29 licensees presently engaged in the business of small loans in the City of Spartanburg. Excluding these 29 licensees, there are 11 small loan companies doing business in other parts of Spartanburg County. It is the opinion of the Board that the existing small loan licensees within the City of Spartanburg have sufficient working capital and credit to meet the demands for services in Spartanburg. There is competition now between the licensees. The granting of a license to the applicant to engage in this business would not promote the convenience and advantage of the community in which the business is proposed to be conducted."

In reversing the order of the Board of Bank Control and directing that a license be issued to respondents, the County Judge in an order filed on July 25, 1959, held that the decision of the Board was based on a formula which was erroneously applied to the facts presented: He said this formula was applied to the population of the City of Spartanburg according to the 1950 census when it should have been applied to the entire County of Spartanburg according to its population in 1958, as estimated in the survey of December 3, 1958, and on this basis an additional license was clearly justified.

Our first inquiry is the scope of judicial review permitted in a matter of this kind. The Act authorizes the Court, on petition by any person aggrieved, to review any order or decision made by the Board of Bank Control. Section 8-794.161. On such appeal, the Act states: "The court shall have jurisdiction to review the facts and the law and to affirm, modify, or set aside the order or decision of the Board and restrain the enforcement thereof." Section 8-794.163.

Taken literally, the foregoing language is perhaps broad enough to provide for unlimited review by the courts and the exercise of independent judgment. But

as pointed out in *Chicago & Southern Air Lines v. Waterman Steamship Corporation,* 333 U. S. 103, 68 S. Ct. 431, 433, 92 L. Ed. 568, "statutes which employ broad terms to confer power of judicial review are not always to be read literally." In ascertaining the legislative intent, it is necessary to keep in mind the functions which under our Constitution can properly be vested in the courts in a matter of this nature. The basic proposition that a constitutional court should not be required to perform non-judicial functions is probably beyond challenge. The perplexing problem is the determination of what is non-judicial. Some administrative bodies perform functions which are judicial or *quasi*-judicial while other agencies perform essentially legislative or *quasi*-legislative or administrative functions. *Floyd v. Department of Labor and Industries,* 44 Wash. (2d) 560, 269 P. (2d) 563. Ordinarily, as pointed out in *State Board of Medical Registration and Examination v. Scherer,* 221 Ind. 92, 46 N. E. (2d) 602, 603, the granting of a license to engage in a trade, business or profession is a ministerial function. As there said, "Ministerial boards act as fact-finding bodies to ascertain whether applicants conform to a legislative formula by which the right to a license is fixed." It was held in *Pue v. Hood,* 222 N. C. 310, 22 S. E. (2d) 896, that the regulation of the conditions under which banking corporations may be organized is essentially legislative and administrative and not judicial. In *Household Finance Corporation v. State,* 40 Wash. (2d) 451, 244 P. (2d) 260, 263, it is said: "The licensing and regulation of small loan companies (which are permitted to make loans at rates which had been theretofore unlawful and which are still unlawful when made by anyone except such a licensee) is an exercise of the police power and essentially a legislative and administrative function."

In order not to offend the constitutional requirement as to separation of powers, statutes undertaking to give the courts *de novo* review of orders of administrative bodies exercising non-judicial functions are generally construed as providing for only a limited review. *State Board*

*of Medical Registration and Examination v. Scherer, supra,* 221 Ind. 92, 46 N. E. (2d) 602; *California Company v. State Oil & Gas Board,* 200 Miss. 824, 27 So. (2d) 542, 28 So. (2d) 120; *Jones v. Marsh,* 148 Tex. 362, 224 S. W. (2d) 198; *De Mond v. Liquor Control Commission,* 129 Conn. 642, 30 A. (2d) 547.

It is our view that the function vested by the Act in the State Board of Bank Control of determining whether a license should be issued to an applicant is non-judicial in nature. In line with the rule above mentioned, we think Section 8-794.163 should be construed as providing for only a limited review. The decision of the Board of Bank Control should not be given the effect of a mere initial recommendation so as to permit the court to substitute its judgment for that of the Board as to whether a license should be issued. Any other construction of Section 8-794.163 might render it unconstitutional. *Household Finance Corporation v. State, supra,* 40 Wash. (2d) 451, 244 P. (2d) 260. Of course, the courts can set aside any decision which is illegal, arbitrary or unsupported by any substantial evidence.

The foregoing construction is in harmony with our practice in reviewing actions of other administrative agencies. We have held that decisions of the Public Service Commission in passing on applications for certificates of convenience and necessity "are presumed to be valid and will not be set aside unless shown to be arbitrary in the sense that no two reasonable men could differ thereabout", *Long Motor Lines, Inc. v. South Carolina Public Service Commission,* 233 S. C. 67, 103 S. E. (2d) 762; that the decision of the Tax Commission in revoking a liquor license will not be disturbed unless wholly unsupported by the evidence, *Feldman v. South Carolina Tax Commission,* 203 S. C. 49, 26 S. E. (2d) 22; that the action of the Board of Naturopathic Examiners in revoking a license to practice Naturopathy will not be set aside unless wholly unsupported by the evidence, *Jacoby v. South Carolina State Board of Naturopathic Examiners,* 219 S. C. 66, 64 S. E. (2d) 138;

and that the action of a Review Committee in making a tobacco acreage allotment under the Agricultural Adjustment Act, 7 U.S.C.A. § 1361 *et seq.* will not be set aside unless its findings are unsupported by substantial evidence, *Lee v. DeBerry*, 219 S. C. 382, 65 S. E. (2d) 775. It is true that some of these cases came up by *certiorari* while the review under the Act in question is authorized by statute. But we have construed this statute as giving the courts a broader power of review than ordinarily permitted by *certiorari* in that we have concluded that the findings of the State Board of Bank Control in passing on an application for license must be supported by substantial evidence.

In determining whether the finding of the Board that the issuance of an additional license in Spartanburg would not promote the convenience and advantage of the community is supported by substantial evidence, it will be helpful to discuss the reason for this requirement. A similar provision will be found in most small loan acts. Attacks upon this clause have been signally unsuccessful. In reviewing its history the Supreme Court of New Jersey in *Family Finance Corporation v. Gaffney*, 11 N. J. 565, 95 A. (2d) 407, 410, said:

"The first draft of the Uniform Small Loan Law and our own statute [N.J.S.A. 17:10-1 *et seq.*] provided for licensing small loan lenders but did not permit the denial of a license except as it appeared that the character and general fitness of the lender was not such as to command the confidence of the community and to warrant the conclusion that the business would be honestly prosecuted. * * *

"However, while the objective of eliminating the loan shark was thereby largely achieved, it was shortly discovered that emphasis upon the character and fitness of the lender was not enough; that the expansion of the regulated business, due to the attractiveness of the return, brought on other undesirable consequences. * * * This demonstration that the public interest was not well served prompted the Russell Sage Foundation to include the convenience and ad-

vantage clause in its fifth draft of the uniform law as an additional requirement to the requirements of character and fitness of the applicant."

The purpose of this clause was explained in *Kelleher v. Minshull*, 11 Wash. (2d) 380, 119 P. (2d) 302, 309, as follows: "It will be observed that the standard adopted by the legislature contemplated two factors: (1) the financial responsibility, experience, character and general fitness of the applicant for a license, and (2) the convenience and advantage resulting to the community from the granting or denial of a license. Thus, the legislature sought not only to guarantee that the small loan business would be conducted by men of the ability, character, and financial standing necessary for the protection of those who may be compelled by reason of some serious emergency to borrow small sums of money, but also to make sure that the needs of the community in that respect were not outrun by the number of such establishments, at the risk of defeating the beneficent purposes of the act. The legislative desideratum was not the mere restriction in number of licenses, but rather the accomplishment of the well known obpectives for which the act was passed."

In *Motors Acceptance Corporation v. McLain*, 154 Neb. 354, 47 N. W. (2d) 919, 921, the Court said: "It is the contention of the applicant that the Legislature never intended to give to the Director of Banking the authority to determine the number of small loan licenses to be granted by requiring a finding that the issuance of the license would promote the 'convenience and advantage' of the community where the business was to be conducted. The small loan business is one which is subject to regulation because of the abuses which seem to be inherently linked with it. Effective regulation requires that the privileges of the act be not granted indiscriminately. Unrestrained competition appears to have attracted an over-abundance of capital as compared with borrowing needs. Increased costs of lending and excessive charges to borrowers were the result. To overcome the

evils of unrestrained competition in this field the Legislature has limited it to those having experience, character, and general fitness, and to places where need for that type of credit exists, and where the business would promote the convenience and advantage of the community where it is to be conducted. We think the last clause clearly indicates that some plan of measuring the small loan potential of each community was contemplated and that the licenses issued were intended to be restricted to the need thus found to exist. By this means the Legislature intended to eliminate or reduce unethical business practices, unfair and unrestricted competition, and overextension of credit. It intended also to increase efficiency, reduce costs of operation, and encourage rate reduction; thus contributing to the welfare of the borrowing public in a field where unethical practices have heretofore flourished."

Whether small loan companies serve the public interest and, if so, whether experience justifies a restriction on the number licensed may be debatable, but these are not considerations for the courts. By incorporating the convenience and advantage clause, the legislature determined that the public interest required a limitation on the number which should be licensed. Obviously no definite yardstick could be fixed. The standard prescribed is necessarily elastic. There are numerous circumstances to be considered, some of them requiring experience, expert knowledge and judgment. The Board of Bank Control was selected as having the necessary competence in this field. In the instant case the Board after a thorough survey of the area determined that no further licenses should be issued at this time in Spartanburg. We cannot say that this conclusion is unsupported by substantial evidence.

It is argued that the Board has adopted a formula of one small loan company per 4,000 persons which was mistakenly applied in passing on respondents' application. It is said that the formula should have been applied to the entire County of Spartanburg, having an esti-

mated population in 1958 of 165,000, which on the basis of the above formula would justify a total of 41 small loan companies in the county while at the present time there are only 40. But the record does not show that the Board has adopted any fixed formula on the basis of population to be used in passing on applications. The reference in the order of the State Board that there was in the State a small loan business for each 4,000 persons was merely in the nature of a general observation and obviously not considered controlling but as one of the many determinants used by the Board in arriving at its conclusion.

But assuming that the alleged formula was adopted as a general policy, it was never contemplated that it should be applied with mathematical precision, which is what respondents' contention would require. This was recognized by respondents' counsel when he stated to the Board at the hearing: "I know it would be a difficult decision to say that 29 is exactly the right number of small loan companies for Spartanburg, that 28 is too small a number and 30 is too many." The decision on such a borderline matter is one for the Board and not for the courts.

The following language of the Court in *Household Finance Corp. v. Gaffney,* 20 N. J. Super. 394, 90 A. (2d) 85, 91, is apposite here: "The difficulty with appellant's position in this aspect of the appeal is its preoccupation with the word 'formula.' At best it is merely a popular designation given to a general policy statement which involves a great deal more than a strict mathematical computation."

The order of the County Court is reversed and the decision of the Board of Bank Control reinstated.

STUKES, C. J., and LEGGE and MOSS, JJ., concur.

TAYLOR, J., dissents.

TAYLOR, Justice (dissenting).

I regret that I am unable to agree with the Majority Opinion and must, therefore, dissent.

Appellant contends that the Court erred in not limiting its scope of review and that the Order of the Board of Bank Control should have been affirmed.

Legislation resulting in enactment of the Statute involved in this appeal was long considered and energetically contested. It is significant that after long consideration the Legislature enacted into law Section 8-794.163, Code of Laws of South Carolina, 1952, 1959 Cumulative Supplement, which is worded as follows:

"The Court shall have jurisdiction to review the facts and the law and to affirm, modify or set aside the order or decision of the Board and restrain the enforcement thereof."

To my mind the use of this broad language is most significant, especially so in view of the fact that this type of business has always proven most difficult to control. The Legislature, in my opinion, was throwing the protection of the Courts about those who might feel aggrieved. It certainly should not be rendered meaningless by Court Decree.

The Majority Opinion holds that there was no evidence to show that a "formula" had been used as a guide by the Board as a basis for its findings or, in fact, that such formula existed at all. A reference to the Order of the Board itself shows that the word "formula" was used, and I think it reasonable to say that if it was of no consequence and had it not been considered it would not have been so stated in the Order. If the census population was used, it is evident that it was improperly applied or it was done so with respect to the City of Spartanburg only, when it was not so intended as the Order itself states:

"* * * It is conceded that all of the County population patronize the business establishments of the City of Spartanburg. * * *"

From the record it appears there are 504 licensees under this Act in the State. Based on the population of the State, every licensee theoretically serves approximately 4,000 persons. Using this as a formula, the Board of Bank Control

found that 29 licensees within the City of Spartanburg would serve only 1,269 persons each under the 1950 census. If this formula is applied to the City according to its 1950 population (36,795), only 9 licenses should have been issued in the City. If the 1958 estimate of the population (44,000) was considered, only 11 licenses should have been issued. Twenty-nine licenses have been issued within the City. The 29th, being issued on January 14, 1959, was obviously issued under the formula based upon the population of the County and not the City alone. Since 1950, Spartanburg has undergone tremendous growth while the City limits have been expanded very little. A great number of business and manufacturing establishments lie immediately without the limits of the City proper and as stated by the Board in its findings, are served by the City of Spartanburg along with other portions of the County.

It is evident that the formula was relied upon and misapplied and was erroneous in respect to the application of respondents who are lifelong, reputable citizens of Spartanburg County and that the act of the Board in respect thereto became unreasonable and arbitrary.

The power of the Courts on review of an administrative determination is usually limited to affirming or setting aside the determination, and it is usually held that they have no power to amend or modify the determination. However, the statutes sometimes vest the court with such power, 42 Am. Jur. 688, Sec. 246, which is precisely the case at hand. The Legislature in clear and unambiguous terms vested the Courts with the power to affirm, modify or set aside an Order of the Board. Being charged with this, the Courts cannot with good conscience say that they are charged only with the duty of reviewing the facts in order to ascertain whether there was substantial evidence to support the findings of the Board. There was a clear misapplication of the basic consideration applied in determining by the Board whether such license should be granted and the duty of correcting such error lay squarely with the Court.

The foregoing in nowise is repugnant to the holdings of this Court in *Jacoby v. South Carolina State Board of Naturopathic Examiners,* 219 S. C. 66, 64 S. E. (2d) 138; *Lee v. Berry,* 219 S. C. 346, 65 S. E. (2d) 257; and *Lee v. DeBerry,* 219 S. C. 382, 65 S. E. (2d) 775. I would, therefore, affirm the Order appealed from.