411 P.2d 755

S.I.C. FINANCE–LOANS OF MENAUL, INC., a corporation, Petitioner-Appellee,

v.

W. J. UPTON, State of New Mexico Bank Examiner, Respondent-Appellant.

No. 7776.

Supreme Court of New Mexico.

Jan. 17, 1966.

Rehearing Denied March 10, 1966.

Judgment reversed; cause remanded with instructions to affirm order of commissioner.

Bigbee & Byrd, Harl D. Byrd, John A. Mitchell, Santa Fe, for appellee.

Boston E. Witt, Atty. Gen., Wayne C. Wolf, Asst. Atty. Gen., Santa Fe, for appellant.

Iden & Johnson, Richard G. Cooper, J. J. Monroe, Albuquerque, amicus curiae on behalf of appellant.

COMPTON, Justice.

The respondent appeals from a judgment reversing his denial of an application for a small loan license.

On July 24, 1963, S.I.C. Finance-Loans of Menaul, Inc., referred to herein as S.I.C., made application for a license to conduct a small loan business at 8318 Menaul Boule-

vard, N. E., in Albuquerque, pursuant to § 48–17–34, N.M.S.A., 1953, as amended. Following a hearing, respondent, referred to herein as Commissioner, entered an order denying the application. Thereafter, the district court granted S.I.C.'s petition for writ of certiorari to review the Commissioner's ruling. He heard the matter on the record before the Commissioner, after which he made separate and independent findings and conclusions. The court then entered its judgment and order reversing the Commissioner's ruling and directed him to issue a small loan license to S.I.C. From this judgment the Commissioner appeals.

The single point raised on appeal by the Commissioner is that his order denying the application was lawful and reasonable, was supported by substantial and competent evidence, and that the court erred in substituting its judgment for that of the Commissioner. The point is two-fold; it again requires a consideration of the scope of review by the district court as well as of the lawfulness of the Commissioner's order.

The Commissioner's findings of fact and conclusions of law read:

*Findings*:

"3. That the population ratio to licenses [in Albuquerque] is approximately 4,500, slightly lower than the State-wide ratio, and lower than any other State in the Union, and lower than the National average, and lower than other and similar states in the West and Southwest.

"4. That delinquencies in Small Loan repayments are increasing substantially in the community of Albuquerque, and in the area alleged to be served by the proposed location of the applicant, as are law suits, bankruptcies and repossessions involving Small Loan licenses.

"5. That nothing in the transcript, file or exhibits, investigation or independent knowledge had by the Commissioner indicates that the Small Loan needs of the community in which the applicant proposes to operate are not being met by the Small Loan licensees now operating in the community."

*Conclusions*:

"1. That additional Small Loan licensees in Albuquerque at this time will tend towards the creation of over-competition among Small Loan licensees to the point that overly aggressive competition will cause practices inimicable to the public interest and damaging to the Small Loan industry.

"2. That the Commissioner does not find that allowing the applicant to engage in business will promote the convenience and advantage of the community in which the business of the applicant is proposed to be conducted."

As previously noted, the court made separate and independent findings. He found that the Commissioner acted arbitrarily, without authority, and erroneously in denying S.I.C.'s application.

The scope of review to be exercised by the district court on appeals from such administrative bodies is well settled in this jurisdiction. The questions to be answered are questions of law and are restricted to whether the administrative body acted fraudulently, arbitrarily or capriciously, whether the order was supported by substantial evidence and, generally, whether the action of the administrative body was within the scope of its authority. The district court may not substitute its judgment for that of the administrative body. Durand v. Reynolds, 75 N.M. 497, 406 P.2d 817; Llano, Inc. v. Southern Union Gas Company, 75 N.M. 7, 399 P.2d 646; Durand v. Carlsbad Irrigation District, 71 N.M. 479, 379 P.2d 773; Kelley v. Carlsbad Irrigation District, 71 N.M. 464, 379 P.2d 763; Continental Oil Co. v. Oil Conservation Commission, 70 N.M. 310, 373 P.2d 809; Johnson v. Sanchez, 67 N.M. 41, 351 P.2d 449; State ex rel. State Corporation Commission v. McCulloh, 63 N.M. 436, 321 P.2d 207. Our review, like that of the district court, is limited to determining whether the facts found by the Commissioner have substantial support in the evidence and, if so, was the law properly applied. Durand v. Reynolds, supra; Ferguson-Steere Motor Co. v. State Corporation Commission, 62 N.M. 143, 306 P.2d 637; Llano, Inc. v. Southern Union Gas Company, supra.

Section 48–17–34, supra, of the New Mexico Small Loan Act of 1955, provides definite standards to guide the Commissioner of Banking in determining when a license shall be issued. Unquestionably, the general welfare of the public is the primary concern of the legislature in providing for the regulation and control of small loan businesses. To that end the issuance or denial of an application for a small loan license is an administrative act and not a judicial function. State ex rel. Hovey Concrete Products Co. v. Mechem, 63 N.M. 250, 316 P.2d 1069; Kelley v. Carlsbad Irrigation District, supra.

Section 48–17–34(b), supra, provides that the Commissioner shall enter an order granting the application only in the event the examiner shall find, among other things not in issue here, that the business "will promote the convenience and advantage of the community in which the business of the applicant is to be conducted." Thus it will be seen that the examiner, or commissioner, is given fact-finding powers the exercise of which permits certain discretion in determining the conditions in the community where the business is to be conducted. Kelleher v. Minshull, 11 Wash.2d 380, 119 P.2d 302.

Section 48-17-52(b) of the Act provides for review by the district court "for the purpose of having the lawfulness of the original order inquired into and determined," and that "the cause shall be heard de novo on the law and the facts as disclosed by the record of the examiner * * *." Paragraph (c) of the same section provides that upon the hearing the court shall enter judgment either affirming the examiner's order or direct what order the examiner shall issue. While this latter statutory directive appears to be a departure from that of requiring a reviewing court either to affirm an administrative decision or to find it unreasonable and arbitrary and set it aside, we do not understand it to change, in any sense, the scope of review of administrative decisions laid down in the authorities cited.

The testimony relating to public convenience and advantage deals almost entirely with physical accessibility, not only to the applicant's present customers dealing largely with its downtown office, but to a speculative number of new customers. While physical accessibility is one factor to be taken into consideration in this connection, admittedly it is not a controlling one. Also to be considered are the needs of the general public in the community as a whole and in the particular area to be served, the number and location of other small loan licensees and the effect upon them and, in turn, on the service and costs to the public, of an additional licensee.

In determining whether the Commissioner's findings are supported by substantial evidence and whether the conclusions based thereon are arbitrary and unreasonable, attention should first be directed to the necessity for regulation of small loan businesses and for the inclusion in the majority of small loan acts, such as ours, of the "convenience and advantage" clause. The subject is aptly summarized in Motors Acceptance Corp. v. McLain, 154 Neb. 354, 47 N.W.2d 919, as follows:

"* * * The small loan business is one which is subject to regulation because of the abuses which seem to be inherently linked with it. Effective regulation requires that the privileges of the act be not granted indiscriminately. Unrestrained competition appears to have attracted an over-abundance of capital as compared with borrowing needs. Increased costs of lending and excessive charges to borrowers were the result. To overcome the evils of unrestrained competition in this field the Legislature has limited it to those having experience, character, and general fitness, and to places where need for that type of credit exists, and where the business would promote the convenience and advantage of the community where it is to be conducted. We think the last clause clearly indicates that some plan of measuring the small loan potential of each community was

contemplated and that the licenses issued were intended to be restricted to the need thus found to exist. By this means the Legislature intended to eliminate or reduce unethical business practices, unfair and unrestrained competition, and overextension of credit. It intended also to increase efficiency, reduce costs of operation, and encourage rate reduction; thus contributing to the welfare of the borrowing public in a field where unethical practices have heretofore flourished."

See also Hubachek, Annotations on Small Loan Laws, § 4, pp. 51 et seq., and 16 Wash. L.Rev., p. 117. Also see § 48–17–30, N.M. S.A., 1953 Comp. (P.S.).

Again, in Kelleher v. Minshull, supra, it was observed that the "convenience and advantage" clause was adopted to make sure that the needs of the community to be served by small loan businesses were not outrun by the number of such establishments at the risk of defeating the beneficent purposes of the Act.

With respect to limitations on the number of licenses to be issued in a given community in order to promote the convenience and advantage of that community, we adopt the reasoning set forth in Board of Bank Control v. Thomason, 236 S.C. 158, 113 S.E.2d 544, wherein it is stated:

"Whether small loan companies serve the public interest and, if so, whether experience justifies a restriction on the number licensed may be debatable, but these are not considerations for the courts. By incorporating the convenience and advantage clause, the legislature determined that the public interest required a limitation on the number which should be licensed. Obviously no definite yardstick could be fixed. The standard prescribed is necessarily elastic. There are numerous circumstances to be considered, some of them requiring experience, expert knowledge and judgment. * * *"

We think the record before the Commissioner shows that findings nos. 3 and 4 have substantial support in the evidence. There were 62 small loan licensees operating in Albuquerque with an estimated population of 274,136. Thirty of these licensees are located in the downtown area and represent the greatest number of loans with the largest amount of money outstanding. S.I.C. is presently the holder of two licenses, one in the downtown area and another on Lomas Boulevard, N. E. In the area in which it now proposes to conduct business, the largely residential population is estimated between 46,000 and 55,000. There are now located in this area six small loan licensees, one of which is across the street from the proposed office, as well as five branch banks, one savings and loan association located next door to the proposed office, and one credit union. It is also clear

that in this area, as well as in Albuquerque as a whole, delinquencies arising out of small loan transactions have increased since 1961.

We think the Commissioner was entirely correct in making finding no. 5. There is no evidence in the record that the needs of the borrowing public in the proposed area are not now being met. Stated differently, there is no evidence of a need in that area at this time for an additional small loan licensee.

But S.I.C. asserts that in the absence of proof of over-competition in the form of sub-marginal loans and other unfair practices detrimental to the general public in the area it proposed to serve, the denial of its application is arbitrary, unreasonable and unlawful. The contention has no merit; it is a negative view. The burden was on the applicant to establish the fact that the granting of a license would promote the convenience and advantage of the community. It is inherent in the Commissioner's findings that this burden was not met. In this connection see Family Finance Corp. v. Gaffney, 11 N.J. 565, 95 A.2d 407.

The judgment must be reversed. The cause is remanded with instructions to the court to affirm the order of the Commissioner.

It is so ordered.

NOBLE and MOISE, JJ., concur.