BEATTY, Justice.
This is an appeal from a declaratory judgment entered in favor of the City of Birmingham. We affirm.
In the late Fall of 1976 a group of citizens from the “Airport Hills” area of Jefferson County met to discuss annexation of the area to the City of Birmingham. A later meeting was held at the Mt. Zion Baptist Church at which three representatives of Birmingham were present: Dr. Richard Arrington, Chairman of the City Council Committee on Municipal Development; Mr. Larry Lavender, Executive Secretary to the Mayor; and Mr. Edward Co-berly of the Community Development Office. Thereafter, on December 21, 1976 the Birmingham City Council adopted Resolution No. 1229-76 (hereinafter Annexation Resolution) which found that an annexation of the area would promote the public good. A copy of the Annexation Resolution was certified and filed with the Jefferson County Probate Judge along with a map of the Airport Hills area. Thereafter the probate judge ordered that an election on the issue be held within the “Airport Hills” area. “Notice” of the annexation election was ordered published in the Birmingham Post-Herald once a week for three consecutive weeks prior to the election.
The results of the January 22, 1977 annexation election reflected that 340 persons were in favor of annexation while 149 persons opposed it. Pursuant to these results the probate judge issued a Final Order of Annexation declaring that the area had become a part of the City of Birmingham.
Plaintiffs, as concerned area citizens, brought the present action for a declaratory judgment to contest the validity of the annexation. Thereafter, an intervention com *1153 plaint was filed against defendant on behalf of the Community Fire District [hereinafter plaintiff].
Trial occurred September 19-20, 1977, following which the court received briefs from the parties and took the matter under advisement. Thereafter, on November 28, 1977, the trial court entered its final judgment in favor of Birmingham, finding affirmatively “that the Airport Hills annexation was undertaken by the representatives of the City of Birmingham in full compliance with the provisions of [Alabama Code of 1940, Chap. 5] Article II of Title 37 [presently Ala.Code of 1975, Art. 3, § 11-42-40 et seq.] and all procedural requirements necessary to validate the annexation were complied with.” Plaintiffs’ motion for new trial was overruled on January 23,1978 and this appeal ensued.
Plaintiffs first contend that the provisions of Title 37, Chapter 5, Article 2 were not intended by the legislature to be employed in the annexation by a municipality of a densely populated residential area. Instead, they argue, the statute was intended to apply only to the annexation of sparsely populated and/or industrialized areas.' They argue this follows from the fact that Ala.Code of 1940, Tit. 37, §§ 154 and 155 provide for tax exempt status for a period of time after annexation of those areas has occurred. We hold otherwise. Sections 154 and 155 must be read in conjunction with § 153 of the statute which provides:
All territory brought within the corporate limits of a city under the provisions of this article, and all property having a situs within such territory, shall be exempt from city taxation or the payment of taxes to the city for . . not less than ten nor more than fifteen years . except as provided in sections 154 and 155 of this title. (Emphasis added)
The fact that §§ 154 and 155 are in the nature of exceptions to the general language of § 153 is crucial. As Professor Sands stated in 2A Sutherland Statutory Construction, § 47.11 (4th ed. 1973) “[Exceptions make it clear that statutes in which they appear should apply to all persons or situations not excepted.” [citation omitted]. This, together with the fact that at no point does Article 2 of Chapter 5 expressly or impliedly deny its coverage to densely populated residential areas, compels this Court to hold that any territory may be subject to an annexation election if there is compliance with the provisions of that statute.
Next the plaintiffs contend that the City conducted the annexation in a false or misleading manner. The gist of this allegation is that prior to the annexation the defendant “disseminated false information regarding the effects of the annexation” at the Mt. Zion Baptist Church meeting of December 13, 1976. This issue of fact was argued at trial and was discussed at length in the trial court’s decree:
This meeting was called and conducted not by the City of Birmingham, but by citizens of Airport Hills who were interested in annexation and who were not connected, to any extent, with the government of the City of Birmingham.
Plaintiffs rely heavily on the conduct of the December 13th meeting, asserting that the statement was there made that school children in Airport Hills would continue to remain in the Jefferson County school system for five years following annexation — a statement which has proved to be incorrect. Having weighed and evaluated the testimony concerning the December 13th meeting, the Court finds that it is possible that some erroneous facts concerning school attendance following annexation may have been circulated at the meeting. These statements, however, were not connected by the plaintiffs to the City of Birmingham. (emphasis added)

Plaintiffs also alleged that certain incorrect printed factual information was distributed at the December 13th meeting. However, there is no evidence that any information was passed out at the December 13th meeting or at any time prior to the annexation by representa *1154 tives of the City of Birmingham. Furthermore, with regard to plaintiffs’ offer of Exhibit 2 which was a question and answer sheet containing information with regard to the consequences of annexation under the tax exemption statute and which contained an incorrect statement with regard to the school issue, the Court finds that this information sheet was obtained after the annexation election of January 22, 1977, and long after the December 13th meeting. There is absolutely no testimony to any extent linking this exhibit with any activity prior to the annexation election or with any representatives of the City of Birmingham who participated in this annexation effort. (emphasis added)
We find nothing in the record of this case which overcomes the presumption of validity attached to a trial court’s findings of fact in a case heard ore tenus. Johnson-Rast & Hays, Inc. v. Cole, 294 Ala. 32, 310 So.2d 885 (1975).
Plaintiffs’ next contentions deal with the adequacy of “notice” of the annexation election. Notice is required by Ala.Code of 1940, Tit. 37, § 142:
The said judge shall give notice of the holding of such election by publication in at least one newspaper, and at the discretion of the judge, in more than one newspaper published in the county wherein such election is to be held, which notice shall state the day on which such election will be held, the voting place or places at which the election will be held, the boundaries within which voters must reside to vote at the respective voting places, which must be within the territory proposed to be brought into the city, and such notice must give a description of the territory proposed to be brought within the city, and must state that a map showing the territory proposed to be brought into the city is on file in the office of the judge of probate of said county, open to the inspection of the public.
First plaintiffs argue that the probate judge abused his discretion in directing that the required “notice” be published in the Birmingham Post-Herald, rather than in the Birmingham News. The evidence elicited at trial showed that the Post-Herald, though published in Jefferson County, had not been permanently delivered in the “Airport Hills” area for twelve years. However, there was no evidence that the probate judge knew of this fact at the time he ordered the notice published in that newspaper, nor does the statute impose any obligation on the probate judge to ascertain the actual degree of circulation of a newspaper. The legislature has determined that it is enough that the newspaper be one of general circulation published within the county wherein such election is to be held. It is true that the probate judge has discretion to order the notice published in more than one newspaper, but on the facts of this case there is no basis for concluding that he abused his discretion in not so ordering.
Secondly, on the notice issue, plaintiffs contend that the “notice” given of the annexation election was incorrect and misleading in that the map of the area filed pursuant to § 142 of Title 37 had at least one-half of the street names incorrect; that the map did not contain a description of the voting places; and because the legal description of the area referred to the “present city limits” as part of the boundary of the area to be annexed.
Section 140 (now § 11-42-42) provides that the certified copy of the resolution to extend the corporate limits — required by § 139 — “shall have attached thereto a plat or map of the territory proposed to be brought into the corporate limits of the city, which certified resolution and plat or map shall be filed with the judge of probate.” Section 152 of the same statute requires that this map or plat
[S]hould show the boundary of the territory proposed to be taken into the city, which territory must be contiguous to the boundary of the city at some point, and such territory may extend to or around the boundary line of any other city, but is not to embrace any territory within the corporate limits of another city.
*1155 The record discloses compliance with the statute in this instance. The fact that the map showed some streets with their original names rather than their present numerical designations does not in itself make the map inadequate to give notice to anyone who might inquire as to the territory involved. Nor does the statute require that the map contain any description of the voting place, although the published notice of the annexation election must state the voting place or places. Code of 1940, Tit. 37, § 142 (now § 11-42 — 44). There was no contention that such a statement did not appear in the published notice.
Plaintiffs’ contention that the legal description filed with the resolution and map was inadequate because it referred to “present city limits” as part of the area boundary is also without merit. That is a standard legal description and, in fact, serves to show satisfaction of the requirement of § 152 that the boundary of the territory be contiguous to the boundary of the city at some point.
Finally, on the notice issue, the trial court observed:
[T]hat no witness for the plaintiffs testified that he or she failed to receive actual notice of the election. To the contrary, four of the plaintiffs’ witnesses resided in the area affected and three of them testified that they voted in the election. The fourth resident witness did not testify whether she voted or not.
The court further found:
[P]articipation [in the election] of over 42 per cent of the electorate. This high participation in this special election strongly evidences that the notice of the time, place and date of the annexation election was not only received, but was understood by the eligible voters in the area.
Plaintiffs’ attempt to bring this case within the framework of City of Birmingham v. Community Fire District, 336 So.2d 502 (Ala.1976) is not well taken. That case affirmed the lower court’s setting aside of an annexation election on the ground that the City of Birmingham had “gerrymandered” the boundaries of the territory, thus unreasonably and unconstitutionally-excluding many voters with similar interests from voting on the issue. In the present case, however, we find no scheme to deny to anyone the right to vote on the annexation issue. This being the case, and mindful of our discussion above, we hold that the judgment of the trial court upholding the annexation was proper. Accordingly, let the decree of the trial court be affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, JONES and SHORES, JJ., concur.