340 So.2d 616 (1976)
CITY OF MONROE, Plaintiff-Appellee,
v.
James A. NOE et al., Defendants-Appellants.
No. 13050.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1976.
Rehearing Denied, January 10, 1977.
*618 Davenport, Files & Kelly by Thomas W. Davenport, Jr. and C. T. Munholland, Monroe, for defendants-appellants, James A. Noe, Individually and as Executor of the Estate and Succession of Mrs. Anna Gray Sweeney Noe, Gay Noe McLendon, James A. Noe, Jr. and Noe Enterprises, Inc.
Jesse S. Heard, Jr., Monroe, for defendant-appellee, H. F. Breard, Jr.
Coon & Lewis by Allen H. Coon, Monroe, for defendant-appellee, Heloise R. Chambers.
Robert C. Downing, Asst. Atty. Gen., Monroe, for defendant-appellee, Atty. Gen., State of La.
Billye L. Adams, Monroe, for defendant-appellee, Grammont C. Breard.
Dimos, Brown & Erskine by David G. Erskine, Monroe, for defendant-appellee, Anne Breard.
Thomas V. Gardner, Jr., Monroe, for defendant-appellee, Charles R. Reichler.
Benjamin M. Peters, Monroe, for defendants-appellees, Benjamin M. Peters and John R. Peters.
Hargrove, Guyton, Ramey & Barlow by Ray A. Barlow, Shreveport, for defendants-appellees, Pennzoil Producing Co. and United Gas Pipeline Co.
Thompson, Sparks & Cudd by Robert C. Cudd, III, and Theus, Grisham, Davis & Leigh by Charles H. Heck, Monroe, for plaintiff-appellee, City of Monroe.
Before HALL, MARVIN and JONES, JJ.
En Banc. Rehearing Denied, January 10, 1977.
MARVIN, Judge.
Without any action by contiguous property owners, a municipality, by the enactment *619 of an ordinance, may annex territory which has boundaries 90 percent in common with those of the municipality. An annexation by this means is not effective until the district court with jurisdiction, in contradictory proceedings, declares the annexation reasonable and in the best interest of the overall community.[1]
The plaintiff City here employed this means of annexation and the court below rendered the requisite declaration. Because the annexed property included a one-foot strip meandering through the City a distance of almost two miles, the number of property owners against whom the City proceeded contradictorily was exceedingly large. Many of the property owners along this strip did not appear in the district court and none appealed.
As the plat (reproduced hereafter) of the annexed property shows, the principal property annexed is a rectangular tract owned by interests or persons deriving title from the late James A. Noe.[2] Only these defendants appeal.
*620 
Appellants urge numerous errors, including the unconstitutionality of R.S. 33:172(C); the insufficiency of "notice" to appellants; discrepancies in the description of the property proposed to be annexed; the pendency of declaratory proceedings to annex the same property instituted about six months before this proceeding, and that the annexation is not reasonable and is not in the best interest of the overall community.

CONSTITUTIONALITY OF R.S. 33:172(C)
R.S. 33:172 originally provided for annexation by petition of 25 percent of owners (and value of property) in the area to be annexed. Act 338 of 1972 amended and reenacted section 172 to provide for annexation by a referendum election (subsection D); by ordinance (subsection C); and changed the petition requirements from 25 percent to a majority (subsection A). Subsection B provides for notice.
*621 Appellants contend that the methods provided by subsections A and D are consistent with the title and purpose of the act, while subsection C is broader than and inconsistent with the title of the act, and violative of Art. 3, Section 16 of the 1921 Constitution.[3]
The title of Act 338 of 1972 provides:
"An act to amend and reenact Section 172 of Title 33 of the Louisiana Revised Statutes of 1950, relative to petition required in connection with the procedure for enlarging the boundaries of a municipality; to require the petition to contain the written assent of a majority of the registered voters provided there are registered voters residing in the area and a majority of the resident property owners and 25% in value of the property of the resident property owners within the area to be included in such municipality; to provide for alternative methods of annexation and otherwise to provide with respect thereto." (Emphasis Ours).
The purpose of the constitutional provision is to give not only the public, but legislators fair notice of the scope of legislation and avoid intentional or unintentional practice of misleading the legislature into passing legislation not indicated in the title of bill. Terrebonne Parish Police Jury v. Board of Commissioners, 306 So.2d 707 (La. 1975).
This provision is to be construed, however, with a view of effectuating rather than frustrating legislative intent. Louisiana Independent Auto Dealers Assn. v. State, 295 So.2d 796 (La.1974). It is necessary that we examine the body of the act for its purpose or aim to determine whether the title of the act is appropriate for the subject matter of the statute. State v. Welkner, 259 La. 815, 253 So.2d 192 (1971); State v. O'Dell, 253 La. 418, 218 So.2d 318 (1969).
The constitutional provision is applicable to amending legislation. New matters may be enacted by amending legislation but are required to be germane to the original statute as if originally enacted. Southern Hide Co. v. Best, 176 La. 347, 145 So. 682 (1933).
Act 338 of 1972 covers the subject matter of annexation, by petition, and by providing "alternative methods of annexation." All things reasonably necessary to carry out the general object of the law, as stated in the title, are considered to be within the scope of the title. Bethlehem Supply Co. v. Pan Southern Petroleum Corp., 207 La. 149, 20 So.2d 737 (1945).
We hold the title of Act 338 is not misleading and R.S. 33:172(C) is germane to and within the scope of the title of the act.

OTHER CONTENTIONS
R.S. 33:178, in part, is pertinent as to the sufficiency of the description of the property:
"Where the boundaries of a municipality have been enlarged or contracted, the ordinance with reference thereto must define with certainty and precision the territory which it is proposed to include in or exclude from the corporate limits, as the case may be . . ."
The Noe rectangular tract presents no problem of description. It is an understatement to say that the one-foot strip obviously presents perplexing problems.
"Conceding that such descriptions must be certain and precise, the rule of interpretation applied is stated in Rhyne's Municipal Law, page 29, Sec. 2:29 as follows:
"`As a general rule, descriptions sufficient for private deeds are sufficient for describing municipal boundaries. However, in order to give effect to the legislative *622 intent, the same strictness will not necessarily be applied to descriptions affecting municipal boundaries, as in the case of private deeds. In ascertaining the municipal boundaries on the ground, practical location, such as permanent markers and well-defined monuments, will prevail over a conflicting description, unless the markers are so manifestly wrong as to lead to an absurd result.'" Dupre v. Mayor and Board of Aldermen of City of Houma, 126 So.2d 637, 644 (La.App. 1st Cir. 1961). (Emphasis Ours).
Our review of the record convinces us that the trial court correctly weighed the evidence and applicable principles of law with respect to the description. We adopt his findings and conclusions on these issues:
"[An expert witness] conclusively testified that from his surveys in the area plus checking and using existing plats on recordation he would be able to locate the subject description on the ground.
"He pointed out several instances, however, where the calls in the subject description were in error . . .
". . . Defendants insist that LSA-R.S. 33:178 means that the entire boundary of the City of Monroe prior to the enactment of Ordinance # 5004, which purports to annex the property in this case must be proved in addition to the boundary of the property sought to be annexed and that the two boundaries must be common on at least 90% of their points.
"The evidence showed that the last annexation ordinance filed in the public records prior to the enactment of Ordinance # 5004 was Ordinance # 4097. That ordinance contained two flaws in that the direction `South 52° 50' East' should have read `South 52° 50' West' and the words which were in the preceding ordinance, to-wit: `. . . of 691.50 feet thence measure South 52° 49' 30" West, a distance . . .' were omitted.
"This omission, it is argued, causes a gap to exist in the city boundary and since the city is bound by the recorded description other means and sources of proof available to individual property owners in their disputes or to other governing bodies, other than municipalities are not available to the City of Monroe in this case.
". . . the Court is of the opinion that the quoted language from R.S. 33:178 regarding the official boundary of the city does not prevent reference to other sources to clarify and establish with reasonable certainty the official boundary." Tr. pp. 128-141.
Considering that the property sought to be annexed was already surrounded by the City and that the City's exterior boundaries were not changed by the annexation, we conclude the City has substantially complied with the statute. Extrinsic evidence may be used to resolve questions in descriptions and in matters of this type, earlier ordinances may be considered in determining whether the annexed property is defined with reasonable certainty. See Thibodeaux v. Comeaux, 243 La. 468, 145 So.2d 1 (1962); Cheshire v. City of Minden, 83 So.2d 526 (La.App. 2d Cir. 1955), writ denied; Smith v. Lincoln Parish Police Jury, 327 So.2d 641 (La.App. 2d Cir. 1976); Town of Coushatta v. Valley Electric Membership Corp., 139 So.2d 822 (La.App. 2d Cir. 1962).
We observe, as did the lower court, that appellants do not contend or show they were prejudiced or mislead in any way by the written description.
The notice or publication requirement of R.S. 33:172(B) and (C) deserves mention here. Subsection (C) provides in part:
"All such ordinances [for annexation]. . . shall comply with the provisions of Subsection (B) . . ."
Subsection (B) provides:
"Notice by publication shall be given once of the filing of the petition in some newspaper published or having general circulation in the municipality. No ordinance enlarging the boundaries of the municipality shall be adopted until ten days after the publication of the notice. Anyone desiring to be heard with reference to the proposed ordinance shall notify the clerk or secretary of the municipality in *623 writing and the governing authorities, before adopting any ordinance, shall grant such hearing."
Subsection (C) provides that before the annexation ordinance can be declared effective, the property owners must be cited and served and, by implication, heard, in a contradictory proceeding.
Our interpretation of R.S. 33:172 leads us to conclude that notice of the City's intention to adopt the ordinance must be published in a newspaper having general circulation in the municipality. The publication must either describe the property proposed for annexation or state where such a description may be reasonably available to the public.
Appellants do not claim they did not have actual notice that the City was proposing by ordinance to annex appellants' property. Since appellants have proceeded contradictorily with the City and have made no showing of prejudice because of the alleged deficiency in the publication, we find no merit in the contentions of defendant as to insufficient notice or discrepancies in description.
Southside Civic Assn. v. Guaranty Savings Assurance Co., 329 So.2d 767 (La.App. 1st Cir. 1976) does not persuade us to the contrary. Notice there was required under a zoning ordinance. It was insufficient because it actually misled property owners into believing their property was to be subjected to less restrictive zoning when in fact, their property was to be zoned more restrictively. The court there correctly found the notice inadequate. We have no showing here that appellants were misled in any way and we find appellants' complaints in this respect without merit.
The declinatory exception of lis pendens urged by appellants is founded upon an attempt, apparently later abandoned, by the City in September, 1972, to annex appellants' property by the same means as employed here. The instant proceedings were begun in March, 1973.
"When two or more suits are pending in Louisiana courts on the same cause of action, between the same parties, and having the same object, the defendant may have all but the first suit dismissed by excepting thereto. C.C.P. art. 531. The exception of lis pendens thus has the same requirements of identities as the exception of res judicata. See C.C. art. 2286. Both exceptions serve to promote efficient judicial administration and to prevent harassment or undue oppression. The exception of lis pendens, however, is applicable before judgment on the merits is rendered in any of the pending suits, while the exception of res judicata is applicable after judgment has been rendered in one of the suits." Slater v. Slater, 336 So.2d 965, 966 (La.App. 4th Cir. 1976).
The first proceeding by the City concerned an ordinance of slightly different wording, and was against different defendants. Publication of the City's intent to enact the first ordinance occurred on September 18, and the ordinance (No. 4065) was adopted September 25.
La.C.C. Art. 2286 provides:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."
Louisiana's doctrine of res judicata is not as broad as the common-law doctrine of collateral estoppel or estoppel by judgment. See 34 La.L.R. 763 and Sliman v. McBee, 311 So.2d 248 (La.1975). Our doctrine is construed stricti juris and is not applied unless all conditions are clearly fulfilled. Barnett v. Develle, 289 So.2d 129 (La.1974).
The object of the two suits actually are concerned with different ordinances, although both ordinances seek to annex apparently the same property and many of the defendants in the first suit are named in the second suit. The second suit names many more defendants (apparently owners along the one-foot strip). All doubt in such *624 instances is to be resolved against exceptor. Makar v. Ivy, 291 So.2d 861 (La.App. 3d Cir. 1974).
We uphold the lower court's action in overruling the exception of lis pendens because the causes the action (ordinances) and the parties were different. See Stanfill v. Johnson, 258 So.2d 141 (La.App. 2d Cir. 1972), writ refused.
Remaining for our consideration is the contention of appellants that the lower court erred in finding the proposed annexation is reasonable and in the best interest of the overall community. The burden of proving these statutory requisites is on the City. We agree with the lower court's conclusions in this respect. The record establishes, among other factors:
The property is drained through the City's drainage system.
KNOE-TV is supplied with City water and natural gas.
The nearest fire station, one mile away, is a City station which has answered the only call to the property. A parish fire station is eight miles away.
The property is accessible only through the city limits over City streets.
The property exists as an island or enclave, not subject to the City building codes, zoning and planning ordinances.
Regularity of boundaries, unity and compactness of municipal limits is one of many factors to be considered in annexation cases. Pyle v. City of Shreveport, 215 La. 257, 40 So.2d 235 (1949).
"With reference to annexation, what is reasonable or unreasonable depends largely upon the particular facts in any given situation . . ." Barbe v. City of Lake Charles, 216 La. 871, 45 So.2d 62, 70 (La.1949).
The record is replete with testimony that the subject annexation is reasonable and in the best interest of the overall community. The City did propose the 1972 legislation, which with some amendment was enacted as Act 338 of 1972. We also recognize that appellants may probably be faced with an increased tax burden. These factors, however, and despite cries of political motivation, are incidental to the reasonableness and community interest. The lower court summarized the factors mentioned which warranted annexation and concluded:
"In short, the primary reason for this proposed annexation was to bring the Noe property under the control of the City for planning and development before Noe decided to do it on his own, which was inevitable as the property was in the direct line of development.

* * * * * *
"This annexation may act negatively in some respects, but it also acts affirmatively for the public welfare; the benefit accrues not only to the municipality, but also to the abutting property owners.
"Furtherance of the social, as well as the economic and political advantages of a community are reasonable objectives." Opinion, pages 11 and 12.
At appellants' cost,
WE AFFIRM.
NOTES
[1] R.S. 33:172 provides that contiguous property owners, by petition or by election, may determine the issue of annexation. Part (C) of Section 172 authorizes another alternative means of annexation in this language:

"C. Notwithstanding the provisions of Subsection (A) of this section, any municipality may annex contiguous areas without the petition required by Subsection (A) of this section, by ordinance, provided at least ninety percent of the boundary of the area to be annexed is common to the boundary of the municipality, and provided further, that said annexation is reasonable and in the best interest of the overall community. All such ordinances adopted under the provisions of this subsection shall comply with the provisions of Subsection (B) of this section, and shall not become effective until the district court of the judicial district wherein the municipality lies shall have ruled after contradictory trial with the owner or owners of the area to be annexed, that the annexation is reasonable and in the best interest of the overall community. In all such proceedings, the rules governing actions for declaratory judgments shall apply except that the municipality shall bear the burden of proving that the ordinance is reasonable and in the best interest of the overall community."
[2] The rectangular tract contains 62 acres. Noe Enterprises, Inc., owns 12 acres on which is situated KNOE-TV. Mr. Noe died while this appeal was pending and the remaining 50 acres, owned by Noe at his death, is being administered as a part of his estate. The executor of Mr. Noe's estate, C. T. Munholland, has been substituted as a party appellant. Rule 13, Uniform Rules, La. Courts of Appeal.
[3] This section reads:

"Every statute enacted by the Legislature shall embrace but one object, and shall have a title indicative of its object.
"The Legislature may, however, by means of a single statute, enact or revise a system of laws of a general or public nature, such as the general statutes, or a codification of laws on the same general subject matter, or both. Such a statute shall be deemed to embrace but one object and its title need only refer to the general purpose and scope of the statute."