This litigation has been before this court several times.City of Homewood v. State of Alabama ex rel. City ofBirmingham, 358 So.2d 424 (Ala. 1978); Mead Corporation v. Cityof Birmingham, 350 So.2d 419 (Ala. 1977); Mead Corporation v.City of Birmingham, 295 Ala. 14, 321 So.2d 655 (1975). It concerns the validity of an annexation *Page 826 
election conducted by the City of Birmingham in the Oxmoor Valley region of Jefferson County on March 8, 1975. This election was conducted under the auspices of the Judge of Probate of Jefferson County pursuant to the provisions of Article 2, Chapter V, Title 37, Code 1940, Recompiled 1958 (Now Code 1975, §§ 11-42-40 through 11-42-88).
Pursuant to statutory requirement, the annexation was officially commenced by the adoption of Birmingham City Council Resolution No. 146-75 on February 4, 1975. After this resolution was adopted, but before the conduct of the election, the City of Homewood attempted a number of consensual annexations under the provisions of Title 37, § 137 (1), Code 1940 (1973 Cum. Supp.). All of these attempted annexations have since been set aside and held void by the Circuit Court of Jefferson County).
Birmingham brought an action against Homewood seeking to enjoin the annexation by Homewood of any property lying within the Oxmoor territory, the subject of the February 4, 1975, City Council Resolution. Homewood responded that the scheduled Oxmoor Annexation would be invalid and asked the court to enjoin the conduct of that election by the City of Birmingham. Certain property owners, but not voters, in the Oxmoor territory moved to intervene in that litigation.
On the same date that Homewood filed what was denominated a third-party complaint, the Mead Corporation filed an independent action in the Bessemer Division of Jefferson Circuit Court against Birmingham and others attacking the legality of the forthcoming election. The judge of the Bessemer Division entered a temporary restraining order and preliminary injunction prohibiting the conduct of the election. United States Steel Corporation later moved to intervene in this litigation, which intervention was allowed.
In the meantime, Birmingham sought the dissolution of the injunctive order before the Bessemer Division. The court refused to dissolve that injunction and Birmingham petitioned this court for extraordinary relief and, by order dated March 6, 1975, in SC 1158 — Ex parte: City of Birmingham, aMunicipal Corp., Petition to Stay or set Aside Temporary Restraining Order, this court ordered that the Oxmoor Annexation election be held as scheduled on March 8, 1975. The election was then conducted and the voters in the Oxmoor territory voted to come into the City of Birmingham by a vote of 60 to 1. The probate judge then entered a Declaration of Result of Annexation Election to this effect on March 19, 1975.
Following the conduct of the Oxmoor Annexation election and Birmingham's successful petition to this court for a writ of mandamus directed to the judge of the Bessemer Division, the litigation commenced there by Mead was transferred to the Birmingham Division for trial. See: Mead Corporation v. City ofBirmingham, 295 Ala. 14, 321 So.2d 655, supra. Thereafter, by agreement of the parties, the Mead litigation was scheduled to be tried to conclusion before any hearing of the Homewood litigation.
The Mead litigation was tried in Jefferson County Circuit Court on September 28, 1976, and continuing on October 28, 1976. Thereafter, in a judgment and final decree dated December 21, 1976, the Honorable William C. Barber, Circuit Judge, found in favor of Birmingham and against Mead and U.S. Steel and directed that a final order of annexation be entered by the Judge of Probate of Jefferson County decreeing that the Oxmoor territory forthwith be incorporated into and become a part of Birmingham. Mead and U.S. Steel appealed to this court from that judgment. The final decree entered by Judge Barber is set out verbatim in Justice Maddox' dissenting opinion in MeadCorporation v. City of Birmingham, 350 So.2d 419, at 422-428, supra.
On petition of parties involved in the Homewood litigation(SC 2383 — Ex parte: Mason Corporation, an Alabama Corp., etal.), this court entered an order on March 1, 1977, enjoining Birmingham or any other party from undertaking any action with respect to the Oxmoor territory in furtherance of the final order of annexation entered *Page 827 
in the probate court pending the conclusion of the Homewood litigation still pending before Judge Barber in the Jefferson County Circuit Court.
Upon a hearing of the consolidated Mead litigation appeal,350 So.2d 419, supra, this court did not reach the substantive issues raised by the parties because it held that the trial court was without jurisdiction to issue its final decree of December 21, 1976, due to the absence from the Mead litigation of the City of Homewood, which the court held was an indispensable party as a result of its claim to certain property in the Oxmoor territory by virtue of its purported annexation following the resolution passed by the Birmingham City Council. This court remanded the Mead litigation for further proceedings before the Circuit Court of Jefferson County with Homewood joined as a party.
On remand, the Mead litigation and the Homewood litigation were consolidated, which the majority had suggested in the Mead appeal, and resulted in a final decree entered on June 14, 1978. In this decree, the trial court held the annexation invalid and addressed only two issues: The sufficiency of the legal description of the land sought to be annexed and the reasonableness of the annexation. The City of Birmingham again appealed. We reverse and render.
The trial court found that the description of the land to be annexed was vague, indefinite and uncertain and, for that reason, the annexation was void. We disagree. While the description is not perfect, it does sufficiently describe the property to be annexed so that it is capable of being located on the ground. While it may be true that it is necessary to look to memorials such as county maps and general surveys of the state to locate the property on the ground, this is not a sufficient reason for voiding the annexation. In Foshee v. Kay,197 Ala. 157, 72 So. 391 (1916), this court held that, although the legal description utilized in an incorporation proceeding was incorrect in that it stated that the property in question was in Township 20 instead of Township 21, this error was inconsequential because other available evidence showed that the property to be incorporated was not incapable of being located on the ground. The appellees, in fact, do not contend that the property cannot be located, they simply assert that it would be difficult to do. This is not the test. In 2 McQuillin, Municipal Corporations (1966 Ed.), § 7.31, the test is stated as follows: ". . . The description should be sufficient, so that the affected territory may be ascertained . . ." The appellees, themselves, have demonstrated that the territory can be ascertained.
The trial court applied the proper standard on the first trial of this issue and said:
 "`The Court has evaluated the testimony of two expert witnesses concerning this point . . . Each witness reviewed the legal description and noted certain ambiguities, each of which was discussed in some detail.
 "`Substantial accuracy (not perfection) is all that is required in an annexation description. See generally State v. City of Birmingham, 167 Ala. 651, 52 So. 461 (1910).[5] At trial Professor Turner concluded that the legal description of the Oxmoor Area was sufficient and valid and was capable of being staked and located on the ground in a survey. The Court agrees and concludes that the legal description is accurate, valid and capable of location on the ground, with closure.
 "`Plaintiffs also argue, in connection with this point, that the legal description is complicated and could not be understood by a layman. This is quite true since it is virtually impossible to write any legal description embracing twenty-five (25) miles of boundary over diverse and widely varying terrain, in language which would be comprehensible to a layman. However, this is not the test. The legal description of the Oxmoor Area sets *Page 828 
forth precisely the configuration of the territory purported to be annexed by use of a metes and bounds description which can be identified and located by a land surveyor on the ground, and this description is more than adequate.
"`. . .'"
[5] As indicated in 2 McQuillin, Municipal Corporations, Section 7.05, it is clear that the description of corporate boundaries is not required to have the particularity ordinarily found in deeds." (350 So.2d at 426, 427)
From a careful reading of the decree rendered on remand of this cause, we are convinced that the trial court believed it was required to reverse its finding on the adequacy of the legal description because of the majority holding in City ofBirmingham v. Community Fire District, 336 So.2d 502 (Ala. 1976). We can understand the trial judge's position, but we do not think the Community Fire District case compelled him to reverse his prior holding. That case stands only for the proposition that where the city excluded inhabitants by gerrymandering the boundaries, its action was unreasonable, and subject to judicial review. It does not stand for the proposition that where the proposed area to be annexed is irregular in shape, it is subject to judicial review. To the contrary, City of Dothan v. Dale County Commission, 295 Ala. 131,135, 324 So.2d 772 (1975), states the law as it still exists in this state:
 "We know of no statutory mandate that the municipal boundaries of all territories sought to be annexed must form a regular shape. Tit. 37, § 135 (10) does require that such annexed territory `form a homogeneous part of the city or town.' But, this is not to imply that homogeneity demands regularity of shape of the boundaries of the municipality.
. . . . .
 "Had the legislature been so disposed as to require all municipalities to possess boundaries of uniform and regular width and length it might have said so."
We hold, therefore, that the trial court correctly applied the law on the first trial of this cause and reverse its current finding that the description of the land to be annexed is so vague and indefinite as to make the annexation void.
If we surmise that the trial court felt bound by the decision in Community Fire District, supra, to reverse its prior findings on the description issue, we need only read the decree of June 14, 1978, to know that it felt bound to hold the annexation void as unreasonable under that decision. The decree, itself, says:
 "Although the legislature has delegated to municipalities the power to alter or extend boundaries, the principle is now firmly settled in Alabama that the power of annexation is not without limitation, but is subject to the test of reasonableness. In City of Birmingham v. Community Fire District, supra, the Alabama Supreme Court stated `that an unreasonable annexation is invalid and subject to judicial scrutiny'. . . ."
The court then went on to hold that the annexation procedure utilized by the City of Birmingham in this case violated the rule of reason enunciated in Community Fire District, supra. Again, we can appreciate the trial judge's difficulty in applying the standard alluded to in Community Fire District.
There is language in that opinion which would seem to support the trial court's conclusion. However, we cannot read that decision to change the long-established and not frequently challenged rule that, in annexing territory, a city acts in its legislative capacity; and generally, if the municipality acts within its delegated authority, the wisdom or expediency of the annexation is not a concern of the courts. 1 Yokley, Municipal Corporations (1956 Ed.), § 34. In this case, it is not questioned that the City of Birmingham followed the statute which provided for the procedure utilized in this annexation. The legislature delegated the authority to the City and it enacted an ordinance which in all respects comports with the statute. In doing so, it determined that it would best serve the needs of the City to annex the property involved in this litigation. In such circumstances, we cannot say that the City acted unreasonably:
 "The general rule is that if the reasonableness of a proposed annexation is fairly debatable, the courts will defer to the judgment of the council in enacting the annexation ordinance . . . *Page 829 
". . .
 "The legislative body of a municipality is given a very broad discretion in the determination of the necessity of the reasonableness of an annexation, and it has been repeatedly held that the courts will interfere only to correct an abuse of that discretion. . . ." 1 Yokley, Municipal Corporations, § 34, supra.
It is true that this court recognized a rule of reasonableness in Community Fire District that it was not intended to permit the court to substitute its judgment for that of the legislative body. We agree with the rule announced by the Supreme Court of Missouri on the question of reasonableness in State ex inf. Mallett v. Joplin,332 Mo. 1193, 1205, 62 S.W.2d 393, 398 (1933):
 ". . . It was not for the trial court to decide whether, upon the facts shown to exist, the extension of the boundaries was necessary, but to determine whether or not, upon the facts shown to exist, reasonable men would differ as to the necessity of the extension. If the question of whether or not the territory involved should be included within the city limits was fairly debatable, that is, if there was substantial evidence each way so that reasonable men would differ about its necessity, then the decision of that question was for the city council and the city electorate and not for the court. . . ."
See also: Washington v. City of Birmingham, 364 So.2d 1151
(Ala. 1978).
We agree with the City of Birmingham and some, if not all of the appellees, that the facts in this case are not in substantial dispute. The question is whether the trial court correctly applied the law to those facts. We hold that it did not and reverse with instructions that a decree be entered holding the annexation of the Oxmoor territory valid.
REVERSED AND REMANDED WITH DIRECTIONS.
All the Justices concur.