688 P.2d 12

**John MUTZ and Rio Colorado Corporation, Petitioners-Appellants,**

v.

**MUNICIPAL BOUNDARY COMMIS-
SION and Town of Red River,
Respondents-Appellees.**

**No. 14983.**

Supreme Court of New Mexico.

July 6, 1984.

Peter V. Culbert, Jones, Gallegos, Snead & Wertheim, P.A., Santa Fe, for petitioners-appellants.

Frank R. Coppler, Kegel & Coppler, Santa Fe, for respondent-appellee Town of Red River.

Paul Bardacke, Atty. Gen., Deborah A. Moll, Reginald J. Storment, Asst. Attys. Gen., Santa Fe, for respondent-appellee Municipal Boundary Commission.

Lauren Marble, New Mexico Municipal League, Santa Fe, amicus curiae.

Wesley B. Howard, Jr., Montgomery & Andrews, P.A., Santa Fe, amicus curiae.

## OPINION

WALTERS, Justice.

In October 1981 the Town of Red River (Red River) applied, under NMSA 1978, Sections 3–7–11 to 3–7–16 (Repl.Pamp. 1981), to annex certain territory. Included in its petition was the following described land belonging to Petitioners:

\* \* \* \* \* \*

All of Blocks 210, 220, 230, 240, 250, and 260;

Lots 4 through 22, Block 270;

Lots 1 through 7, the 42 feet of Lots 13 and 14 and Lots 15 through 22, Block 280;

\* \* \* \* \* \*

Lots 10 through 12, Block 410;

All of Lots 420, 430, 440, 450, 460, 470 and 480;

\* \* \* \* \* \*

Notice of public hearing was published as required by Section 3–7–14(B), and the hearing was held in December 1981. On February 1, 1982, the Municipal Boundary Commission (Commission) found that Petitioners' land and certain other land specified in Red River's petition were "contiguous" to Red River and "may be provided with \* \* \* municipal services" by Red River. The Commission ordered annexation of the parcels described.

John Mutz and Rio Colorado Corporation (Petitioners) petitioned the district court pursuant to N.M. Const. art. VI, Section 13, and NMSA 1978, Section 3–7–15(E) (Repl. Pamp.1981), for a writ of certiorari to review the Commission's decision to allow annexation of their properties. The district court ordered the issuance of the writ, and subsequently quashed it. Petitioners appeal; we affirm.

On the district court's issuance of a writ of certiorari to the Commission in March 1982, Petitioners and Respondents submitted briefs and the matter was heard on March 31, 1983. Prior to entering its order quashing the writ, the district court wrote to the parties explaining its decision to quash, stating that, as a reviewing court, it "may not substitute its judgment for that of the fact finder below." It noted "the kind and quality of proposed municipal services \* \* \* are beyond the scope of this Court's review." The letter also stated that the Commission's order was presumed to be correct, that the evidence would be viewed in favor of the order, and that "[d]espite the Commission's ostensible refusal to consider 'reasonableness' as a standard, the Order and its substantial basis in the record compel the Court to find that the Commission's Order is founded on reason."

Petitioners make three claims in this appeal:

(1) That the trial court did not properly review the Commission's decision;

(2) That the Commission and the district court incorrectly interpreted the statutory annexation requirements, and the Commission's findings regarding the requirements were unsupported by substantial evidence; and

(3) That the Commission was required to consider the reasonableness of the annexation.

### 1. District Court Review

Petitioners complain that the district court's order quashing the writ of certiorari, rather than the issuance of a decision, constituted a denial of their right to a review on the merits provided by Section 3–7–15(E). They also challenge, as erroneous, the statement in the court's letter of decision that it could not substitute its judgment for that of the Commission.

 There was no procedural error in the review of the Commission's order. District court review of an administrative decision is limited to questions of law. *S.I.C. Finance-Loans of Menaul, Inc. v. Upton,* 75 N.M. 780, 411 P.2d 755 (1966). Those questions are whether the administrative agency acted fraudulently, arbitrarily, or capriciously; whether the Commission's order was supported by substantial evidence; and whether the agency acted within the scope of its authority. *Id.* The district court does *not* conduct a trial de novo. *Ferguson-Steere Motor Co. v. State Corporation Commission,* 63 N.M. 137, 314 P.2d 894 (1957). Although it may correct a misapplication of the law, the reviewing court generally may not substitute its judgment for that of the administrative agency. *Conwell v. City of Albuquerque,* 97 N.M. 136, 637 P.2d 567 (1981).

In the order quashing the writ it is recited that the court heard and considered the arguments of counsel, and considered the briefs and all other matters filed of record. That order is supplemented in the record by the judge's letter to the parties in which the judge found that the Commission's decision was "founded on reason." Having conducted a thorough review and having determined that the Commission's order

should "remain undisturbed," the district court did not err in quashing the writ of certiorari instead of issuing a decision. Petitioners' attack is upon form rather than upon substance. They received the review authorized by the statute.

### 2. Statutory Requirements

The duties and authority of the Commission are set forth in Section 3–7–15. It provides, in pertinent part, as follows:

A. At the public hearing held for the purpose of determining if the territory proposed to be annexed to the municipality shall be annexed to the municipality, the municipal boundary commission shall determine if the territory proposed to be annexed:

(1) is contiguous to the municipality; and

(2) may be provided with municipal services by the municipality to which the territory is proposed to be annexed.

### (A) Contiguous territory.

Petitioner's assert two grounds to argue that the requirement of contiguity was not met. First, they contend that "contiguity" requires touching and that certain of Petitioners' annexed territory did not "touch" Red River, but was made contiguous only through the annexation of the intervening territory. Second, citing *Township of Owosso v. City of Owosso,* 385 Mich. 587, 189 N.W.2d 421 (1971), they maintain that contiguity requires even more than "mere touching"—there must also be a showing that the municipality after annexation will be a "homogeneous and unified entity." *Id.; Big Sioux Township v. Streeter,* 272 N.W.2d 924 (S.D.1978). They assert that their "rural type cabins" and "pasture land" do not meet the *Owosso* standard for annexation.

 Our standard of review is the same as that imposed upon the district court. *Conwell v. City of Albuquerque.* Because the interpretation of "contiguous" as it appears in Section 3–7–15 is a question of

law, we need not defer to the interpretations given by the Commission or by the district court. *See id.*

With respect to Petitioners' first argument on the definition of "contiguous," we do not agree that each unit, block, or lot of land to be annexed must have a common boundary with the municipality. Such an interpretation would hinder the operation of the annexation statute and manifestly make it impossible to annex more than a "touching" lot or block at a time. We interpret statutes in order to facilitate their operation and the achievement of their goals. *Martinez v. Research Park, Inc.,* 75 N.M. 672, 410 P.2d 200 (1965) *overruled on other grounds, Lakeview Invest., Inc. v. Alamogordo Lake Village, Inc.,* 86 N.M. 151, 520 P.2d 1096 (1974). We perceive one of the principal purposes of the annexation statutes to be the orderly and natural development of urban areas. *See Hendricks v. City of Nampa,* 93 Idaho 95, 456 P.2d 262 (1969). To apply Petitioners' meaning would permit annexation in a strip-by-strip or lot-by-lot manner only. Adoption of such a definition would surely defeat any orderly or natural development intended by the authorizing legislation.

We turn to Petitioners' second argument, that "contiguous," in the context of annexation, also means that there be a "community of interest" between the municipal body and the annexed land, and there be created a "homogeneous and unified entity." If the finding on contiguity does not include these considerations, Petitioners argue, one of the elements for annexation fails to exist and the annexation becomes unreasonable.

Although we do not necessarily agree with Petitioners that the meaning of "contiguity" should be broadened in all annexation cases to embrace the concepts contended for by them, we think the weakness in their argument, if it be valid at all, is that they presume to look at the existence of "community of interest" and "unified entity" and "homogeneity" only from their point of view. It is as though they were asserting (and therefore proving) incompatibility as a ground for dissolution of a marriage, and arguing that because they are not in agreement with annexation, the lack of community interest, homogeneity and unification of the entity is indisputably proved.

The case law on the question of "unified entity" and "community of interest" as elements of contiguity discloses that the courts using such language were concerned with the municipality's gerrymandering of territory to be annexed so as to exclude opposing landowners who might vote against annexation, *e.g., Township of Owosso v. City of Owosso;* or with creation of "islands of unannexed territory" surrounded by the municipality, with an interstate highway (which presented a physical barrier) running the length of the annexed area, *see Big Sioux Township v. Streeter;* or, by including a connecting area of forested, roadless, uninhabited land in the area to be annexed, the municipality would add to its tax rolls, without providing any benefits in return, an outlying industrial property worth twice the value of all property in the municipality. *Portland General Electric Co. v. City of Estacada,* 194 Or. 145, 241 P.2d 1129 (1952). It is within the context of facts of that nature, and of instances when isolated non-contiguous areas have been annexed by means of annexing a connecting "shoestring" or strip of land, *Town of Mt. Pleasant v. City of Racine,* 24 Wis.2d 41, 127 N.W.2d 757 (1964), that courts have been moved to say that "community of interest" and "homogeneous unity" are requirements of "contiguity." In each of the cases we have researched which so state, there was no real advantage to anyone in annexing the *contiguous* land—the municipalities' interest was focused solely on land lying outside the boundaries touching the municipalities, usually to increase their tax bases. The very idea of homogeneity—being of a similar kind or nature—cannot exist if patches of unannexed land are interspersed between the municipality and the annexed area, or barriers between those lands exist

or are created by the annexation, or the attempted annexation bisects buildings or improvements or businesses conducted on the property to be annexed. *See Batchelder v. City of Coeur d'Alene*, 85 Idaho 90, 375 P.2d 1001 (1962). It is the patchwork type of annexing that prompts courts to discuss "contiguity" in the extended sense advocated by Petitioners.

> [T]he popular idea of a municipal corporation * * * is that of oneness—a collective body, not several bodies. So, as to territorial extent, the idea of a city is one of unity, and not of plurality; of compactness or contiguity, not separation or segregation.

*Town of Mt. Pleasant v. City of Racine*, 24 Wis.2d at 46, 127 N.W.2d at 760; *see also Township of Owosso; Big Sioux Township.*

Under the facts of the instant case, there is no suggestion that separation or segregation will be the result of annexation. The enlarged community will be a united area, compact and "contiguous" in all respects. The diversity of land use and differences in architectural styles of buildings or residences are differences common to all municipalities; yet the integrity of the community may be preserved and protected by zoning ordinances which are in accordance with a comprehensive plan for the general welfare of the city and its people. *City of Santa Fe v. Gamble-Skogmo, Inc.*, 73 N.M. 410, 389 P.2d 13 (1964). The kind of "homogeneity" expressed in some courts' definitions of "contiguity" is not absent in this case.

Our review for substantial evidence to support the Commission's finding of contiguity is controlled by our decision in *Duke City Lumber Co. v. New Mexico Environmental Improvement Board*, 681 P.2d 717, 23 SBB 447 (1984). Examining the entire record and viewing the evidence in the light most favorable to the Commission's decision, *id.*, it is uncontradicted that Petitioners' land, as a whole, shares a common boundary with Red River. A map exhibit introduced at trial and reproduced here indicates that the annexed land is rectangular in shape and its configuration reflects a natural growth of Red River toward the south and east.

Dark area = Existing boundaries of
 Town of Red River

Light area, southeasterly
part of map = Petitioners' lands

Our annexation statutes, enacted by the arm of government having the exclusive authority to fix the boundaries of municipal corporations, *Leavell v. Town of Texico*, 63 N.M. 233, 316 P.2d 247 (1957), do not make distinctions based on the character of the land to be annexed or the kinds of buildings standing on the land. We construe those statutes liberally in favor of the municipality. *Id.* Lacking a clear showing that the character of the land to be annexed and its structures are destructive of homogeneity and unity of the whole, we will not disturb the Commission's finding of contiguity. There is nothing in this record to persuade us that the Commission's determination was incorrect.

**(B) May be provided with municipal services**

■■■■■ According to Petitioners, the statutory requirement that the annexed territory "may be provided with municipal services" should be interpreted to mean that Red River has the immediate capability of providing such services. Petitioners attempt to equate "may" with "must," and they ignore the rules of construction found in NMSA 1978, Section 12-2-2. There it is said that "may" is defined as permissive or directory, not mandatory. To accept Petitioners' argument would be to impose the wholly impractical burden upon many municipalities to commit and spend extensive funds on expanded facilities upon the hope that a petition for annexation will be approved. The operation of the annexation statutes would be hindered by such an interpretation; we will not adopt it. *See Martinez v. Research Park, Inc.* It is our opinion that the statutory requirement is satisfied if the municipality demonstrates the ability to provide services to the territory to be annexed within a reasonable period of time. Under our scope of review, we are satisfied that there is substantial evidence to support the Commission's finding that Petitioners' land was being provided with some services at the time, and could be provided within a reasonable time with all municipal services.

■■■■ A further argument of Petitioners is that neither the Commission nor the district court considered the adequacy of the municipal services to be provided to Petitioners' land. Their challenge on that ground is misplaced. Whether municipal services are adequate is a political question to be addressed, not by the courts, but by the state legislature or the municipality. *See Clarke v. City of Wichita,* 218 Kan. 334, 543 P.2d 973 (1975).

**(C) Misdescription**

■■■■ That some of the area was described in Red River's petition as "Lots" instead of "Blocks" is immaterial. The descriptions, in context, were substantially and sufficiently correct to put all interested parties on notice of the area sought to be annexed. *See Hughes v. City of Carlsbad,* 53 N.M. 150, 203 P.2d 995 (1949). The map (see reproduction) was attached to Red River's petition; it clearly disclosed all of the properties covered by the petition and made apparent that the description of Blocks 420, 430, 440, 450, 460, 470 and 480 as "Lots" was a mere typographical error. *See City of Birmingham v. Mead Corp.,* 372 So.2d 825 (Ala.1979); *City of Monroe v. Noe,* 340 So.2d 616 (La.App.1977).

Red River's substantial compliance with the requirement of Section 3-7-13 that the petition "describe the territory to be annexed" satisfied the purpose of the statute.

**3. Reasonableness as a requirement of annexation**

■■■■ Petitioners' major argument is that, in addition to finding that the two statutory requirements are met, the Commission must also make a finding that the annexation is "reasonable under the totality of the facts." They claim it was error for the Commission to avoid such a finding of reasonableness in this case. Citing *Hughes,* they assert that the reasonableness standard must take into account the effect on the landowners in the territory to be annexed, and the adaptability of the territory to urban use. Municipal annexation, however, is a legislative function. *Hughes v. City of Carlsbad.* The wisdom and the fairness of an annexation are left to the discretion of the municipality and the state legislature. The Commission, a creature of statute, may exercise only such power and authority as is granted to it by statute. *New Mexico Electric Service Co. v. New Mexico Public Service Commission,* 81 N.M. 683, 472 P.2d 648 (1970). Because the legislature established only the two requirements for annexation as set forth in Section 3-7-15, the Commission was only authorized to determine whether those two requirements were met.

We have indeed incorporated a reasonableness standard in our review of administrative decisions, but we do not perpetuate the rule applied in *Hughes* to annexation

decisions. When *Hughes* was decided, the statute provided no substantive guidelines to the annexing municipality. See NMSA 1941, §§ 14–606 to 14–608. Section 3–7–15, on the other hand, contains two specific substantive requirements.

We are referred by Petitioners to cases discussing "reasonableness of extension of corporate boundaries," *e.g., Hughes v. City of Carlsbad; Town of Mt. Pleasant v. City of Racine; Batchelder v. City of Coeur d'Alene; Portland General Elec. Co. v. City of Estacada.* We recognize that reasonableness is an inherent requirement in the Commission's determination because of the scope of review to which we are directed in appeals of administrative decisions, *i.e.,* to determine "whether the administrative body acted fraudulently, arbitrarily or capriciously, whether the order was supported by substantial evidence and, generally, whether the action of the administrative body was within the scope of its authority." *Llano, Inc. v. Southern Union Gas Company,* 75 N.M. 7, 11–12, 399 P.2d 646, 650 (1964). "Arbitrary and capricious" conduct has been defined as that which is "unreasonable" or without a rational basis and which is a product of "* * * an unconsidered, wilful and irrational choice of conduct and not the result of the 'winnowing and sifting' process." *Garcia v. New Mexico Human Services Dept.,* 94 N.M. 178, 179, 608 P.2d 154, 155 (Ct.App.1979), *rev'd, New Mexico Human Services Department of Garcia,* 94 N.M. 175, 608 P.2d 151 (1980) (quoting *Olson v. Rothwell,* 28 Wis.2d 233, 137 N.W.2d 86 (1965)). Consequently, although the statute does not specifically direct the Commission to act reasonably, it is an implicit requirement because the element of reason in its decision, or its absence, is a basis for our review. *Id.*

■ Petitioners suggest that the chairman of the Commission felt inhibited in going beyond the two statutory requirements of contiguity, as we have defined it, and the furnishing of services, in approving the proposed annexation. We interpret the chairman's comments to include the necessity for consideration of overall reasonableness, but to exclude any consideration of economic impact resulting from approval of the requested annexation. The chairman's observation, to the effect that the Commission would not consider annexation in terms of economic impact or lack of need in the annexed property for the services to be furnished, is supported by numerous decisions upholding the right of the legislature to grant the power of annexation to local governing bodies absent consideration of such factors. The wisdom, necessity or advisability of annexation, in the context of economic impact or fairness to the inhabitants of the territory to be annexed, are political questions left to the discretion of the municipality and the legislature. *Clarke v. City of Wichita.*

■ Our review of the Commission's order and the trial court's refusal to disturb it does not persuade us that the Commission acted arbitrarily, capriciously, or fraudulently. Consequently, the trial court's decision that the order of annexation was "founded on reason" is entirely supportable by the record, and is confirmed by our own review.

The order quashing the writ of certiorari and upholding the Commission's order of annexation is affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, concurs.

STOWERS, J. specially concurs.

STOWERS, Justice, specially concurring.

I concur with the result reached in this opinion. However, I disagree with the treatment of the concept of reasonableness as found in Point 3. This opinion incorrectly incorporates a reasonableness standard into all future annexation decisions. A reasonableness test is not required by the law. NMSA 1978, Section 3–7–15 (Repl.Pamp. 1981) provides, in pertinent part:

A. At the public hearing held for the purpose of determining if the territory proposed to be annexed to the municipality shall be annexed to the municipality,

the municipal boundary commission shall determine if the territory proposed to be annexed:

(1) is contiguous to the municipality; and

(2) may be provided with municipal services by the municipality to which the territory is proposed to be annexed.

B. If the municipal boundary commission determines that the conditions set forth in this section are met, the commission shall order annexed to the municipality the territory petitioned to be annexed to the municipality.

A plain reading of this statute shows that there are but two determinations to be made by the Municipal Boundary Commission. The statute fails to mention reasonableness as a test and the Commission was correct in not considering reasonableness *per se* as an element of the annexation decision.

The statutes empowering municipalities to enlarge or diminish their boundaries are to be liberally construed in favor of a municipality's action. *Leavell v. Town of Texico,* 63 N.M. 233, 316 P.2d 247 (1957). Moreover, this Court must give special weight and credence to the experience, technical competence, and specialized knowledge of administrative commissions. *Grace v. Oil Conservation Commission,* 87 N.M. 205, 531 P.2d 939 (1975). In the present case, the fact that the annexation may not be reasonable to the parties whose land is being annexed is not an issue and is not the test under the laws of the State of New Mexico. Here, the Municipal Boundary Commission was correct in not making a finding on the issue of reasonableness and applied the proper legal standard in making its order of annexation.