2002-NMCA-024

41 P.3d 933

**CITY OF ALBUQUERQUE, Acequia Madre De Carnue Community Ditch Association and Board of Trustees of the Canon De Carnue Land Grant, Petitioners–Appellees,**

v.

**STATE of New Mexico MUNICIPAL BOUNDARY COMMISSION, Respondent–Appellant,**

and

**West Tijeras Canyon Ltd. Co., Interested Party–Appellant.**

No. 22,000.

Court of Appeals of New Mexico.

Jan. 11, 2002.

Certiorari Denied, No. 27,337, Feb. 26, 2002.

Robert M. White, City Attorney, David Suffling, Assistant City Attorney, Albuquerque, NM, for Appellee City of Albuquerque.

Patricia A. Madrid, Attorney General, Alvin R. Garcia, Assistant Attorney General, Santa Fe, NM, for Appellant Municipal Boundary Commission.

Kevin J. McCready, John A. Myers, Myers, Oliver & Price, P.C., Albuquerque, NM, for Appellant West Tijeras Canyon Ltd. Co.

## OPINION

PICKARD, Judge.

{1} West Tijeras Canyon Ltd. filed an annexation petition with the Municipal Boundary Commission, seeking to have its property annexed to the City of Albuquerque. The Commission determined that the annexation met the requirements of NMSA 1978, § 3–7–15(A) (1965) and ordered the property annexed to the City. On certiorari review, the district court held, inter alia, that the Commission incorrectly interpreted the statutory requirements when it refused to consider the City's opposition to the annexation in making its decision. We hold that the Commission was required to not only consider, but give substantial deference to, the City's opposition to the annexation petition. We therefore affirm the district court's decision reversing the Commission's order.

## FACTS AND PROCEEDINGS

{2} The Municipal Boundary Commission is an independent administrative board vested with the authority to hear petitions for annexation. *See* NMSA 1978, § 3–7–11 (1995). The Commission may hear petitions from either municipalities seeking to annex new territory or from landowners hoping to stretch the boundaries of a municipality to include their property. The Commission's decision-making process is governed by Section 3–7–15(A), which provides that:

> At the public hearing held for the purpose of determining if the territory proposed to be annexed to the municipality shall be annexed to the municipality, the municipal boundary commission shall determine if the territory proposed to be annexed:
>
> (1) is contiguous to the municipality; and
>
> (2) may be provided with municipal services by the municipality to which the territory is proposed to be annexed.

If the Commission finds that the two requirements of Section 3–7–15(A) are met, then under Section 3–7–15(B) it must approve the annexation.

{3} West Tijeras owns a 165 acre parcel of land in Bernalillo County. The property lies south of Interstate 40, sharing its borders with the Four Hills neighborhood in Albuquerque on the west and the Canon de Carnue Land Grant to the east. In 1998, West Tijeras approached the Albuquerque City Council, asking the City to annex the property and change the property's "County A–1" zoning designation to allow for denser development. The Council voted to deny annexation. About six months later, West Tijeras presented a petition to the Commission seek-

ing to have 101 acres of the property annexed into the City. West Tijeras's main purpose in seeking annexation is to gain access to City water and sewer services. If the property remains county land, West Tijeras can only develop using water wells and septic tanks.

{4} At the Commission's hearing on the petition, the City maintained its opposition to the annexation. The Commission examined the two statutory requirements set out in Section 3–7–15(A). The first requirement, contiguity, was not at issue. A difference of opinion arose, however, as to whether the second requirement was met. The Commission Chairman indicated that West Tijeras need only show that the City was capable of providing services to the area, stating that "the criteria is not whether the City will or wants to ... it's whether they can...." The City, however, argued that the second requirement would not be met as long as the City was opposed to providing services to the property. Rejecting this interpretation, the Commission voted unanimously in favor of the annexation.

{5} The City and the Land Grant filed separate petitions seeking review of the Commission's decision, which were consolidated into a single action. The district court, after conducting a full-record review, reversed the Commission's decision. The district court found that the Commission misinterpreted the second statutory requirement by substituting "can" in place of "may." The court also found that "[t]he law pertaining to the Municipal Boundary Commission method of annexation cannot be interpreted to mean that annexation must be granted in favor of single corporate owners of land who wish municipal services for developmental purposes over the objection of the municipality and the people." As a result of these findings, the district court concluded that the Commission's decision was arbitrary and capricious, unreasonable as a matter of law, and unsupported by substantial evidence.

{6} West Tijeras and the Commission jointly filed a petition for certiorari with this Court, presenting two questions for review: (1) whether the district court's decision to reverse the Commission was erroneous because there was sufficient evidence that the two statutory requirements were met and (2)

whether the district court erred in considering matters unrelated to the two statutory requirements. In reviewing the petition, we were mindful that Rule 12–505(D)(5) NMRA 2001 limits the grounds on which we may issue a writ of certiorari to review the decision of a district court in an administrative appeal. *See C.F.T. Dev., L.L.C. v. Bd. of County Comm'rs,* 2001–NMCA–069, ¶ 9, 130 N.M. 775, 32 P.3d 784. We granted certiorari because we found that this case raises a question of substantial public interest regarding the ability of the Commission to approve annexation of property to a municipality over the objection of that municipality.

## DISCUSSION

{7} Appellants argue that the Commission's initial interpretation of the statute was correct, and therefore the Commission was required to approve the annexation once West Tijeras demonstrated that the City was able to provide services to the area. Appellees, on the other hand, assert that the Commission erred in substituting the word "can" for "may," and argue that the annexation can only be approved with the City's consent. This is a case of first impression. It appears that the Commission has never before been asked to approve the annexation of territory to a municipality over the objection of that municipality. We must now determine the implications of the legislature's use of the word "may" within this statute.

{8} The interpretation of a statute is an issue of law that is subject to de novo review, and "we need not defer to the interpretations given by the Commission or by the district court." *Mutz v. Mun. Boundary Comm'n,* 101 N.M. 694, 697–98, 688 P.2d 12, 15–16 (1984). "When appropriate, we will rely on rules of grammar to aid our construction of the plain language of a statute." *Wilson v. Denver,* 1998–NMSC–016, ¶ 16, 125 N.M. 308, 961 P.2d 153. Appellants cite to numerous dictionaries, including Black's Law Dictionary, to support their argument that the two words are sometimes used interchangeably. On the other hand, NMSA 1978, § 12–2A–4(B) (1997) instructs us that " '[m]ay' confers a power, authority, privilege or right." In contrast, "can" connotes ability. *See, e.g., William Strunk Jr. & E.B.*

*White, The Elements of Style 42* (4th ed. 2000) ("*Can.* Means 'am (is, are) able.' Not to be used as a substitute for *may.*"). In the context of the annexation statutes and the statutes relating to municipal planning, the word "may" in Section 3–7–15(A) cannot reasonably be interpreted as "can" in the manner Appellants suggest.

{9} We acknowledge that our Supreme Court indicated in *Mutz* that the statutory test could be satisfied "if the municipality demonstrates the ability to provide services to the territory to be annexed." *Mutz*, 101 N.M. at 701, 688 P.2d at 19. In *Mutz*, however, it was the municipality, not landowners, petitioning for annexation. The municipality's willingness to provide services was not at issue. The *Mutz* Court, in explaining the difference in meaning between "may" and "must," recognized that "may," as used in this particular statute, is permissive. *Id.* We are confident that the legislature intended that the Commission find something more than mere physical ability when the legislature directed the Commission to insure that services "may be provided" rather than "can be provided."

{10} Nonetheless, we do not read the statute as requiring landowners to seek a municipality's consent to annexation when presenting an annexation petition to the Commission. The legislature provided two options for landowners who wish to see their property annexed to a municipality. The most commonly exercised option is the "petition method," which is set out in NMSA 1978, §§ 3–7–17 and 17.1 (1998). Using that method, if landowners holding a majority of the acres in the territory proposed to be annexed are in favor of annexation, they can petition directly to the governing body of the municipality. The municipality may then "express its consent or rejection" by ordinance. *See* §§ 3–7–17(A)(4);–17.1(B)(2). This was the approach first taken by West Tijeras in seeking to have its property annexed. The alternative option is the "boundary commission method," which is governed by NMSA 1978, §§ 3–7–11 through 16 (1965, as amended through 1995). Once again, approval is required from landowners holding a majority of the acres in the territory proposed. Unlike the petition method, however, the statutes governing the boundary commission method provide no mechanism through which a municipality can express its consent.

{11} If the legislature had intended to require municipal consent under the boundary commission method, it would have included a consent provision in the governing statutes, just as it did in the petition method statutes. Moreover, if municipal consent was required under the boundary commission method, then there would be no meaningful difference between the two options available to landowners. If a municipality was withholding its consent to annexation, there would be no reason for landowners to approach the Commission. Since we presume that the legislature does not intend to enact useless statutes, *see Benavidez v. Sierra Blanca Motors*, 122 N.M. 209, 213, 922 P.2d 1205, 1209 (1996), we do not think this is a correct interpretation of Section 3–7–15.

{12} The City argues that the legislature could not have intended to give landowners the power to force a municipality to annex property despite the municipality's objection, or to allow the Commission to override the City's planning decisions. The Commission, however, does have that power. The state legislature has the power to create and to destroy municipal corporations, and to enlarge or diminish their boundaries, with or without consent of either the municipalities or the affected residents. *Leavell v. Town of Texico*, 63 N.M. 233, 235, 316 P.2d 247, 248 (1957). The legislature can delegate its authority to an administrative agency, as long as it sets defined boundaries for administrative decision making in order to avoid a violation of separation of powers. *See AA Oilfield Serv., Inc. v. N.M. State Corp. Comm'n*, 118 N.M. 273, 279, 881 P.2d 18, 24 (1994). The legislature delegated its authority to determine municipal boundaries to the Commission. *See* § 3–7–11(A). When it did so, it provided a defined set of guidelines for the Commission to follow under Section 3–7–15. The Commission, therefore, has the authority to annex property over the objections of the municipality involved.

{13} In sum, we cannot adopt either party's position wholesale. In our opinion, the City could not unilaterally defeat West Tijer-

as's petition by withholding its consent to the annexation, but the Commission could not annex property over the City's objection upon a mere showing that the City is capable of providing services to the area. We are still left, then, with some ambiguity as to the meaning of the statutory language. The ambiguity arises, in part, from the use of passive voice in the statutory language. The statute instructs the Commission to determine "if the territory proposed to be annexed . . . may be provided with municipal services by the municipality to which the territory is proposed to be annexed." *Id.* While may is permissive, it is not clear whose permission is required in this context.

### The Commission Should Have Deferred to the City's Opposition to the Annexation

▆▆▆▆ {14} When statutory language is ambiguous, we consider the legislative purpose behind the statute in conjunction with related statutes to resolve its meaning, "always striving to 'select the rationale that most likely accomplishes the legislative purpose.' " *Wilson*, 1998–NMSC–016, ¶ 36, 125 N.M. 308, 961 P.2d 153 (quoting *State v. Anaya*, 1997–NMSC–010, ¶ 29, 123 N.M. 14, 933 P.2d 223). All parts of a statute must be read together to ascertain legislative intent. *Id.* The statutes governing annexation, when read together, demonstrate an overall intent to assure that residents who are annexed into a municipality receive services from that municipality. This concern is seen most fully in the statutes governing the arbitration method of annexation. *See* NMSA 1978, §§ 3–7–5 to 10 (1965, as amended through 1985). When an arbitration board is deciding whether territory should be annexed, the statute requires the board to "determine if the benefits of the government . . . are or can be available within a reasonable time to the territory proposed to be annexed." Section 3–7–10(A). If the board approves the annexation, "[t]he territory so annexed shall be governed as part of the municipality and the governing body of the municipality shall promptly proceed tó make the benefits of the government of the municipality available to the territory so annexed." Section 3–7–10(C).

{15} In keeping with the legislature's intent to assure that residents within an an-

nexed territory have access to municipal services,. we think that when the legislature directed the Commission to determine that services "may be provided," it wanted to assure that residents would have the right to demand such services if the territory was annexed. The difference in language between the arbitration method and the boundary commission method reflects the differing role of the municipality in the process. The arbitration method can only be initiated by the municipality, *see* § 3–7–5, so there will be no question that the municipality is willing to annex the territory. The arbitration board, therefore, is asked to determine that it is physically possible for the municipality to provide services, and that those services will be provided to residents within a reasonable time. This inquiry assures that a territory-hungry municipality will not reap the benefits of annexing territory without providing for the needs of its new inhabitants.

▆▆▆ {16} When a municipality petitions the Commission, there is again no question that the municipality is willing to annex the territory, so the Commission's task is to insure that the provision of services is physically possible. That was the case in *Mutz*, where the municipality's willingness to provide services was not at issue. *Mutz*, 101 N.M. at 701, 688 P.2d at 19. We do not read the Court's statement in *Mutz* that "the statutory requirement is satisfied if the municipality demonstrates the ability to provide services to the territory to be annexed within a reasonable period of time," *id.*, as limiting the Commission's inquiry when the municipality's willingness to provide services is at issue. When landowners present annexation petitions, the Commission must make further inquiries and consider the municipality's position regarding annexation. As part of that inquiry the Commission should have not only considered the City's opposition to the annexation, but should have given the City's position considerable deference.

{17} The City's objection to the annexation relates directly to the statutory requirement that services "may be provided" to the area proposed to be annexed. Much of the City's time and resources are directed toward planning and growth management efforts. In do-

ing so, City officials have evaluated how best to provide service to existing territory and where it would be best able to expand services to meet anticipated population growth. Appellants' arguments that the City is capable of providing services to the area disregards the City's right to determine where and how those services should be provided. As one example, West Tijeras presented testimony that the City could provide social services to residents if the land is developed. The City, however, is already concerned that it is not providing sufficient services to seniors living in the nearby area. Annexation would also impact the City's provision of police, fire, and emergency services; schools; social services; street maintenance; refuse pickup; and many other services. Annexation of the West Tijeras land would put an additional burden on the City and undermine its efforts to provide an adequate level of services to those areas already within its municipal boundaries.

{18} The City presented evidence that annexation of the West Tijeras property conflicted with a number of its established policies. The annexation conflicts with the Albuquerque Bernalillo County Comprehensive Plan, which designated the land as Rural Area. The Comprehensive Plan states that Rural Areas "shall generally retain their rural character with development consisting primarily of ranches, farms and single-family homes on large lots." Annexation of the West Tijeras property conflicts with the City's infill policy, Resolution 70, which expresses a strong preference that development occur within existing infrastructure so that the City's resources are not directed toward extending its infrastructure to new areas. These policies reflect the City's considered evaluation of how best to provide services to current and future residents. Based on these policies, the City expressed its opinion that it did not want to extend its service area to include the West Tijeras property. The Commission should have deferred to the City's opinion as to the wisdom of extending its services to the area.

{19} Appellants contend the City's planning policies are not relevant to the Commission's inquiry, because the City can control the level of development in the area through its zoning power. Annexation alone, however, will obligate the City to provide some services to the area, including police and fire services. Roads may need to be built to provide access for emergency services. School services may have to be provided if families with children move into the area. In addition, municipal zoning authority is not unlimited, so the City may not be able to accomplish by zoning what it wishes to accomplish.

### The Commission's Decisions Must Be Reasonable

{20} Appellants also contend it would be unfair to consider the City's opposition to annexation when the Commission is required to disregard the concerns of residents who oppose annexation. That was true in *Mutz*, where the Commission excluded any consideration of the economic impact on residents when allowing the town of Red River to annex contiguous property, and in *Cox v. Municipal Boundary Commission*, 120 N.M. 703, 905 P.2d 741 (Ct.App.1995), where residents outside Sunland Park unsuccessfully argued that annexation should be defeated because the city's sole motivation was to increase its tax base. In both cases, the Commission's decisions were affirmed on appeal. *See Mutz*, 101 N.M. at 702, 688 P.2d at 20; *Cox*, 120 N.M. at 708, 905 P.2d at 746.

{21} Those cases established two principles. First, the Commission cannot look beyond the two statutory requirements included in Section 3–7–15. *Mutz*, 101 N.M. at 701–02, 688 P.2d at 19–20. Second, the Commission's decision is subject to a standard of reasonableness. *See id.* at 702, 688 P.2d at 20; *Cox*, 120 N.M. at 708, 905 P.2d at 746. Our decision today is consistent with those principles. The Commission's obligation to consider the City's opposition to annexation is part of its review of the statutory requirement that services may be provided to the territory proposed to be annexed. We are not instructing the Commission to look beyond the statutory requirements. Instead, our opinion today confirms that the Commission must apply the reasonableness standard when making its determination that the two requirements are met.

{22} In *Mutz*, our Supreme Court held that the Commission must apply a standard of reasonableness in determining whether or not territory is contiguous. *Id.* at 702, 688 P.2d at 20. Although affirming the Commission's finding of contiguity in that case, the Court recognized that in some situations it might be unreasonable to find that territory is contiguous even when it physically touches the municipality. *See id.* at 698, 688 P.2d at 16. One example is the so-called "shoestring" annexation, where an isolated strip of land is included in an annexation petition solely for the purpose of creating contiguity with more desirable property. *Id.*

{23} Similarly, when the provision of services is at issue, the Commission must apply a reasonableness standard rather than rely solely on a technical determination that it is physically possible to extend municipal services to the proposed area. As one City official explained during the hearing on this annexation, "You can make anything feasible if you spend enough money." Yet the City could reasonably argue that the provision of services would be so expensive or burdensome as to be prohibitive. Thus, even when looking at whether the provision of services is physically possible, the decision must be made within reason. Similarly, when the City argues that annexation would be inconsistent with its planning decisions regarding the provision of services to the area, it is unreasonable for the Commission to find that services may be provided to the area. The Commission should only exercise its authority to annex property over a municipality's objections based on a finding that those objections are unreasonable under the circumstances. Because we think it is clear that the City was raising reasonable concerns based on well-established policies, we hold that it was unreasonable for the Commission to approve the annexation.

{24} We recognize that many residents who have been subject to forced annexation have felt that the statutory scheme unfairly denies them the opportunity to object on reasonable grounds because those grounds fall outside the two statutory requirements. To the extent that the residents' objections relate to the two statutory requirements, the Commission should hear and consider those objections. The statute as written, however, leaves no room for consideration of other matters. For that reason, the district court was incorrect when it held that the Commission was required to make an overall determination that the annexation was reasonable and that the Commission could not order the territory annexed over the objections of "the people." In this case in particular, the residents who spoke in opposition to the annexation lived outside the annexation territory, so their objections were beyond the scope of the Commission's inquiry.

## CONCLUSION

{25} The Municipal Boundary Commission has the authority to annex property to a municipality over the objections of that municipality. The Commission should only exercise its authority to annex property over a municipality's objections based on a finding that those objections are unreasonable under the circumstances. When the municipality proves the existence of a well-developed planning policy and shows the proposed annexation to be in conflict with that policy, and objects to the annexation based on that conflict, the Commission should defer to the municipality's objections to annexation and deny the annexation. Because the City of Albuquerque presented uncontroverted evidence that annexation of the West Tijeras property was contrary to its existing policies on annexation and development, the City had a reasonable basis for opposing annexation, and West Tijeras's petition should have been denied.

{26} For the foregoing reasons, we affirm the judgment of the district court.

{27} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Judge, and CYNTHIA A. FRY, Judge.